95 N.J. Super. 122 (1967)
230 A.2d 168
J.D. CONSTRUCTION CORP., A NEW JERSEY CORPORATION; J.D. HOLDING CORP., A NEW JERSEY CORPORATION, AND JAMES D'AGOSTINO, PLAINTIFFS-APPELLANTS,
v.
SIDNEY ISAACS, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 1, 1967.
Decided May 17, 1967.
*125 Before Judges CONFORD, FOLEY and LEONARD.
Mr. John R. Halleran argued the cause for appellants (Messrs. Giordano & Giordano, attorneys).
Mr. Paul J. Feldman argued the cause for respondent Sidney Isaacs (Mr. Charles Frankel, attorney).
The opinion of the court was delivered by CONFORD, S.J.A.D.
Plaintiffs appeal by leave of court from an order entered by Judge Salvest striking a part of the fourth count of their amended complaint asserting causes of action for wrongful interference with economic advantage and for slander and libel.
Plaintiffs are developers and builders in the Freehold area. The original complaint is based upon an alleged campaign by defendant of public vilification of plaintiffs as builders with the intent and purpose of injuring their business. The fourth count of the amended complaint is primarily founded upon certain occurrences at a regular public meeting of the mayor and township committee of the Township of Freehold (governing body) on March 28, 1966, at which there came up for consideration the question of approval or disapproval of a special use permit and variance in favor of plaintiffs for the construction of garden-type apartments which had been recommended by the board of adjustment. N.J.S.A. 40:55-39(d).
*126 The amended complaint goes on to allege:
"8. At the conclusion of the discussion of the aforesaid application by members of the Township Committee, and immediately following the calling for a vote upon the matter by the Mayor, the defendant did maliciously and wrongfully disrupt the meeting, over the ruling of the Mayor that the defendant was out of order, and presented all public officials there present with photostatic copies of a letter.
9. Simultaneous with his presentation of this letter to members of the Township Committee, the defendant made certain public statements which, either expressly or by implication, characterized the plaintiff, J.D. Holding Corp., as having acted improperly in connection with its application aforesaid.
10. At the request of the Freehold Township Committee the defendant permitted said letter to be read in full, which letter either expressly or by implication falsely characterized the plaintiffs, J.D. Holding Corp. and James D'Agostino, individually, as having acted wrongfully and improperly in connection with the application aforesaid."
In succeeding paragraphs the amended complaint asserts that defendant's actions were a part of an intentional and deliberate scheme to harass plaintiffs' efforts to construct the project and that the statements were false and defamatory and caused plaintiffs to lose the financial benefit of the proposed garden apartments. Compensatory and punitive damages were demanded.
The order here appealed resulted from a motion by defendant to dismiss the amended complaint on the ground that it failed to "state a cause of action upon which relief can be granted." At the hearing of the motion and on this appeal the argument has been confined to the question whether defendant was immune from liability for defamation for his statements and actions at the meeting because the occasion constituted a quasi-judicial proceeding cloaking parties therein with absolute privilege, within the principles restated in Rainier's Dairies v. Raritan Valley Farms, Inc., 19 N.J. 552 (1955). Since, in addition, the finding of such immunity was the sole ground for Judge Salvest's action, we will confine our appraisal of the complaint to that asserted deficiency. The *127 need for at least further particularization therein of the assertedly defamatory words is, however, obvious.
The argument of the motion was not attended with any affidavits on either side. So far as appears, even the text of the letter in question was not before the court, although we have permitted defendant to include it in his appendix to afford us some elementary understanding of plaintiffs' grievance. The letter, as illumined by plaintiffs' description of the accompanying remarks at the oral argument, is supposedly supportive of the contention that defendant had charged plaintiffs at the meeting with having improperly tried to dissuade his attendance at the board of adjustment hearing to object to the application.
The order entered on the motion did not grant all the relief sought in terms of the notice of motion but struck the amended complaint as it "relates to a letter presented at the Township Committee Meeting" and "insofar as anything touching on the presentation and reading of the letter is concerned." Plaintiffs were also directed by the order to file a new amended complaint conforming with its terms.
The law in relation to the scope of the privilege in quasi-judicial proceedings is not sharply defined, and a penumbral area remains wherein the question of divergence of the character and nature of proceedings of the body from those of a court and that of relevance or pertinence of the communication or utterance to the subject matter before the body for disposition may be determinative of the degree of the privilege. See Prosser on Torts (3d ed. 1964), p. 796 et seq.; Fenning v. S.G. Holding Corp., 47 N.J. Super. 110, 118 (App. Div. 1957). In Rainier's Dairies, supra, the court said that the line between judicial and quasi-judicial proceedings in this area "may sometimes be indistinct" 19 N.J., at p. 562. It there held that a petition by a milk wholesaler before the Office of Milk Industry charging illegal arrangements between its dealer-customer and a competing wholesaler in connection with an application by the dealer to transfer its source of supply from the petitioner to the competitor was attended *128 with the absolute privilege. In the course of its opinion the court said:
"It is true that in strictly judicial proceedings the potential harm which may result from the absolute privilege is somewhat mitigated by the formal requirements such as notice and hearing, the comprehensive control exercised by the trial judge whose action is reviewable on appeal, and the availability of retarding influences such as false swearing and perjury prosecutions; and the view has been expressed that it is only the potential harm as thus mitigated which may properly be considered outweighed by the public interest in favor of broad access by suitors to the courts. Cf. Mills v. Denny, 245 Iowa 584, 63 N.W.2d 222, 40 A.L.R.2d 933 (Iowa Sup. Ct. 1954); Matthis v. Kennedy, [243 Minn. 219] 67 N.W.2d 413 (Minn. Sup. Ct. 1954). But where, as here, the administrative proceeding was actually conducted in manner and with safeguards similar to a judicial proceeding and dealt with issues of significant public concern there would, under this or any other plausible view, be no basis for refusing to invoke the doctrine of absolute privilege or immunity to the same extent that it would be applicable in court proceedings." (at p. 562)
One of the appellate grounds advanced by plaintiffs is that defendant was not a party to the proceedings before the governing body and for that reason not privileged. We disagree. The matter under consideration was in the nature of a review of the action of the board of adjustment. Both the board and the governing body were acting in a quasi-judicial capacity. See Kotlarich v. Mayor and Council of Borough of Ramsey, 51 N.J. Super. 520, 540-541 (App. Div. 1958). It is not denied, as asserted by defendant, that he resided within 200 feet of the property affected by the variance application. He was therefore entitled to written notice of the hearing before that body and to participate fully therein. N.J.S.A. 40:55-44; Kramer v. Board of Adjustment, Sea Girt, 45 N.J. 268, 277 (1965). Defendant was consequently a party in interest before the governing body when pursuant to its duty under the statute it assembled in public session to consider, inter alia, whether to approve the action of the board of adjustment. Whether defendant had a strict right of notice and opportunity to be *129 heard at that stage in opposition to the application such that without it any action by the governing body would have been invalid may be doubtful. The statute does not mandate a hearing. N.J.S.A. 40:55-39(d). However, the Supreme Court has stated, at least in relation to the status of the applicant for the variance who has been successful before the board of adjustment, that "ordinary concepts of representative government" require he be given notice and an opportunity to be heard before the governing body, albeit only on the record made before the board of adjustment  not a "trial-type" hearing. Reinauer Realty Corp. v. Borough of Paramus, 34 N.J. 406, 418 (1961).
We are of the opinion that defendant, as a party in interest before the board of adjustment, had a right on a par with that of the applicant for the variance to express his position on the matter when it reached the governing body.
Although plaintiffs concede, as perforce they must in view of Rainier's Dairies, supra, that proceedings before bodies performing quasi-judicial functions ordinarily generate the absolute privilege, they contend that the rule should not be applied in the present case because the proceedings did not "conform to the requisite safeguards referred to by the Supreme Court in Rainier's Dairies." We think, however, that plaintiffs read too much into the Rainier's Dairies opinion in this regard. Procedures before quasi-judicial bodies vary greatly and usually do not, and are not expected to, conform with the full panoply of safeguards against the hazard of defamatory utterances that attend a proceeding in court. Even court litigation will involve aspects where the safeguards are necessarily relaxed, e.g., in the consultation of a prospective witness with a lawyer, in the drafting of a pleading, and in the taking of depositions or affidavits ex parte. Yet, the absolute privilege attaches in all such instances. See, respectively, Middlesex Concrete, etc. v. Carteret Industrial Ass'n, 68 N.J. Super. 85 (App. Div. 1961); Taliaferro v. Sims, 187 F.2d 6 (5 Cir. 1951); Prosser on Torts (3d ed. 1964), § 109, p. 797.
*130 We think the instant proceedings bore a sufficiently similar character to the generality of quasi-judicial proceedings in which the absolute privilege has been recognized to justify subsumption under that broad category. The proceedings were initiated by the recommendation of the board of adjustment; it was appropriate to have given notice and an opportunity to be heard (see Reinauer Realty Corp. v. Borough of Paramus, supra) to the parties even if there was none in fact; there was a presiding officer to control the proceedings, and the decision was of a quasi-judicial character and was reviewable on the law and the facts before a court. Compare Parker v. Kirkland, 298 Ill. App. 340, 18 N.E.2d 709 (App. Ct. 1939) (before a tax appeals board), cited with approval in Rainier's Dairies v. Raritan Valley Farms, Inc., supra, 19 N.J., at p. 560. See also Prosser, op. cit., at p. 799; Fenning v. S.G. Holding Corp., supra (before a rent control board). We are in square disagreement with the reasoning of Ellish v. Goldman, 117 N.Y.S.2d 867 (Sup. Ct. 1952), which holds the privilege does not obtain at a hearing before a zoning board of appeals. Cf. Whelan v. Wolford, 164 Cal. App.2d 689, 331 P.2d 86 (D. Ct. App. 1958).
Also of significance in the evaluation of the policy for applying the immunity is the public import of the subject matter of contention in the proceedings. Rainier's Dairies, supra, 19 N.J., at pp. 562-563. Clearly, an application for a variance to build apartment houses has a substantial public import.
Moreover, whether or not defendant was out of order at the time he made his representations, particularly the proffer of the letter, the amended complaint declares that these communications were, in effect, incorporated into the proceedings on the initiative of the township committee before the body voted on the matter ("at the request of the Freehold Township Committee the defendant permitted said letter to be read in full"). Thus, that document was before the governing body in the course of the proceedings, and this *131 fairly comprehends, in the language of the order under review, "anything touching on the presentation and reading of the letter."
Plaintiffs place much emphasis on the decision in Mills v. Denny, 245 Iowa 584, 63 N.W.2d 222, 40 A.L.R.2d 933 (Sup. Ct. 1954). It suffices to distinguish that case to point out that no quasi-judicial matter was before the city council there, but merely a private request for certain administrative or legislative action.
Plaintiffs have not argued on this appeal that the absolute privilege does not apply because the subject matter of the communications was not pertinent or relevant to the matter before the governing body for determination, but the possible question should be laid to rest. The question of pertinency is one for decision by the court as a matter of law. Harper and James, Law of Torts (1956), § 5.22, p. 425, n. 26.
The scope of pertinency and relevance for present purposes was carefully explored by Judge Hughes in Fenning v. S.G. Holding Corp., supra, 47 N.J. Super., at pp. 118-119. As was there stated:
"The pertinency thus required is not a technical legal relevancy, such as would, necessarily, justify insertion of the matter in a pleading or its admission into evidence, but rather a general frame of reference and relationship to the subject matter of the action. Johnston v. Schlarb, 7 Wash.2d 528, 110 P.2d 190, 134 A.L.R. 474. As to the degree of relevance needed to invoke the absolute shield of this immunity, the courts are most liberal, for the same reasons that the jurisdiction of the tribunal is not weighed with technical precision, but need only be colorable, i.e., an assumed authority to act under law (O'Regan v Schermerhorn, supra), for otherwise the speaker or writer would have to decide the question of jurisdiction at his peril, and the sweep of the privilege would be inhibited at the cost of the policy considerations which give it life. Rainier's Dairies v. Raritan Valley Farms, Inc., supra."
See, too, concerning the policy considerations militating for broadly liberal standards in this regard, Harper and James, op. cit., at pp. 425-426; Prosser, op. cit., at pp. 798-799. Restatement of Torts, §§ 587, 588, comment c., states: *132 "It is not necessary that the defamatory matter be relevant or material to any issue before the court. It is enough that it have some reference to the subject of the inquiry * * * [i.e.] if it has any bearing upon the subject matter of the litigation." See, in reference to a case where the tribunal is called upon to act with some measure of discretion, as here, People ex rel. Bensky v. Warden of City Prison, 258 N.Y. 55, 179 N.E. 257, 259 (Ct. App. 1932).
Taking the allegations of the amended complaint at face value, we regard the communications here involved as sufficiently pertinent to the subject matter before the governing body to satisfy the requirements of the rule vouchsafing the privilege.
To the extent that the cause of action for defamation falls under this determination (i.e., so far as posited upon the matter stricken from the complaint) the same fate attends the claim for wrongful interference with economic opportunity. Rainier's Dairies v. Raritan Valley Farms, Inc., supra, 19 N.J., at pp. 563-564.
The order is affirmed.