[615 NYS2d 410]

ALLAN AND ALLAN ARTS LTD., Doing Business as GATEWAY PLAYHOUSE, Appellant, v GLORIA M. ROSENBLUM, Respondent.

Second Department, August 1, 1994

APPEARANCES OF COUNSEL

*Nowak & Pope,* Water Mill *(Ann L. Nowak* of counsel), for appellant.

*Gloria May Rosenblum,* East Islip *(Kenneth Rosenblum* of counsel), respondent *pro se.*

## OPINION OF THE COURT

BALLETTA, J.

The plaintiff brought the instant action to recover damages for slander and libel based on statements made by the defendant at a hearing before the Village of Bellport Zoning Board of Appeals (hereinafter the Board), which statements related to the plaintiff's application for a use variance for its property located adjacent to the defendant's property. The Supreme Court, Suffolk County, held that the defendant's statements were covered by an absolute privilege and dismissed the complaint pursuant to CPLR 3211 (a) (7) for failure to state a cause of action. The question that must be resolved, therefore, is whether an absolute privilege should attach to relevant statements made by an adjoining landowner at a public hearing conducted by a village zoning board of appeals on an application for a variance. We agree with the Supreme Court, Suffolk County, that an absolute privilege attaches to such statements and, therefore, affirm.

The plaintiff, a regional playhouse, is located in the Village of Bellport in an area zoned Residence B, and has operated a summer theatre on the subject premises since the 1940's. The defendant has owned the property abutting the plaintiff's eastern boundary for 16 years.

In April 1989 the plaintiff applied to the Board, seeking a variance for the outdoor storage of tractor trailers and for a handicapped parking lot on the southeast corner of its property. On June 22, 1989, the Board held a public hearing on the plaintiff's application. A court stenographer was present at the hearing, at the plaintiff's request, and recorded the proceedings, a transcript of which was thereafter provided to the Board pursuant to an agreement between the Board and the plaintiff.

At the hearing, the defendant made various oral statements

in opposition to the plaintiff's application, limiting her remarks primarily to the plaintiff's proposed handicapped parking in the southeast corner of the parcel. While the defendant did not object to the use of a portion of the plaintiff's property for handicapped parking, she objected to its location adjacent to her property, asserting that the proposed location was unsuitable for handicapped purposes, and that the headlights from the vehicles would shine into her living room. During her oral presentation, the defendant also made numerous allegations concerning the plaintiff's use of the property. In particular, she claimed that the plaintiff's past and present use of the southeast portion of its property for parking was illegal, that the plaintiff's current request for a variance designating the area for handicapped parking was a "cynical manipulation * * * to legalize its long term conduct", and that the plaintiff had "continued to violate the law, maintain the illegal storage, parking, noise and illegal year-round activity, despite years of warning".

In its complaint, the plaintiff alleged that the defendant's oral statements made at the hearing were not only slanderous but that they were also libelous because they were recorded and published by the court stenographer. The defendant moved to dismiss the complaint on the ground that her statements before the Board were protected by an absolute privilege. The Supreme Court, Suffolk County, granted the motion and dismissed the complaint, ruling that the Zoning Board was a quasi-judicial body, and, therefore, statements made before that body were absolutely privileged; the court further held that, as the adjacent landowner, the defendant enjoyed sufficient status to entitle her to the privilege. We agree.

It has long been settled "that a counsel or party conducting judicial proceedings is privileged in respect to words or writings used in the course of such proceedings reflecting injuriously upon others, when such words and writings are material and pertinent to the questions involved; and that, within such limit, the protection is complete, irrespective of the motive with which they are used" (see, Marsh v Ellsworth, 50 NY 309, 311-312; see also, Fowler v Conforti, 194 AD2d 394; Hammer v Berg, 193 AD2d 716; Grasso v Mathew, 164 AD2d 476). The same rule applies with equal force to the statements made by witnesses in a judicial proceeding (see, Andrews v Gardiner, 224 NY 440, 446).

The rationale for the according of an absolute privilege to

such statements is that: " 'The interest of society requires that whenever [persons] seek the aid of courts of justice, either to assert or to defend rights of person, property, [or] liberty, speech and writing therein must be untrammelled and free. The good of all must prevail over the incidental harm to the individual. So the law offers a shield to the one who in legal proceedings publishes a libel, not because it wishes to encourage libel, but because if [persons] were afraid to set forth their rights in legal proceedings for fear of liability to libel suits, greater harm would result, in the suppression of the truth. The law gives to all who take part in judicial proceedings, judge, attorney, counsel, printer, witness, litigant, a *right* to speak and to write, subject only to one limitation, that what is said or written bears upon the subject of litigation' (1 Seelman, The Law of Libel and Slander in the State of New York [rev ed], par 191, p 233)" *(see, Park Knoll Assocs. v Schmidt,* 89 AD2d 164, 170, *revd on other grounds* 59 NY2d 205; *see also, Liberman v Gelstein,* 80 NY2d 429; *Karam v First Am. Bank,* 190 AD2d 1017; *Marsh v Ellsworth, supra,* at 312).

Moreover, the grant of absolute immunity which attaches to statements made in the course of judicial proceedings applies not only to proceedings before a court but also to proceedings "before tribunals having attributes similar to those of courts" *(see, Andrews v Gardiner, supra,* at 446). The evolution of the application of absolute privilege to quasi-judicial proceedings was described by this Court in the case of *Julien J. Studley, Inc. v Lefrak* (50 AD2d 162, 165, *affd* 41 NY2d 881): "We acknowledge that the rule of qualified privilege has been a traditional point of departure in the analysis of defamation suits vis-à-vis administrative proceedings. Over 40 years ago this court specifically held the rule applicable to a license revocation proceeding similar to that involved herein *(Leganowicz v Rone,* 240 App Div 731). Since that time, however, the complexities of our modern society have substantially broadened the role of administrative law both in its rule-making and adjudicative aspects. With that expansion has come a concomitant recognition by many courts that certain attributes of the judicial process have equal relevance to those administrative bodies that utilize a quasi-judicial process in the determination of individual rights, privileges or obligations."

Accordingly, during the past several decades, the courts have extended the absolute privilege to a wide array of hearings held by administrative agencies, finding such hear-

ings to be "in substance judicial" *(see, Andrews v Gardiner, supra,* at 447). Examples include *Herzfeld & Stern v Beck* (175 AD2d 689 [the New York Stock Exchange's Department of Enforcement acted as a quasi-judicial body when it inquired into whether a member or its employee should be disciplined]), *Stilsing Elec. v Joyce* (113 AD2d 353 [proceedings held before an administrative agency of the New York State Department of Labor investigating the defendant's complaint concerning the plaintiff's apprenticeship program were quasi-judicial]), *Lipton v Friedman* (2 Misc 2d 165 [Workers' Compensation Board hearing which passes upon claims of injured workers brought against their employers was deemed quasi-judicial because of the hearing's adversarial nature, since the Referee's decision applied the law to the facts, and was subject to appellate review]), *Kitchner v State of New York* (82 Misc 2d 858 [unemployment insurance benefits hearing constituted quasi-judicial proceeding because the issue was determined by an adversarial proceeding, appropriate provisions of law were applied to the facts and the decision was subject to appellate review]), and *Julien J. Studley, Inc. v Lefrak* (50 AD2d 162, *supra* [a complaint filed with the agency that licenses real estate brokers concerning a license revocation proceeding]).

Turning now to the instant case involving statements made at a public hearing held by a zoning board of appeals on an application for a variance, it should be noted that the quasi-judicial character of a zoning board of appeals was addressed by this Court in *Matter of Orange County Publs. v Council of City of Newburgh* (60 AD2d 409, *affd* 45 NY2d 947), wherein it was held that the deliberative proceedings of a zoning board regarding a variance application were quasi-judicial *(see, Matter of Orange County Publs. v Council of City of Newburgh, supra,* at 418; *see also,* 12 NY Jur 2d, Buildings, § 319). Similarly, in *Matter of Moundroukas v Foley* (99 AD2d 784), this Court affirmed the dismissal of a suit for monetary damages against the members of the Greenburgh Zoning Board of Appeals for denying an application for a variance, finding that the Board's determination was "discretionary and quasi-judicial in nature", thus immunizing the members of the Board from suit *(see, Matter of Moundroukas v Foley, supra,* at 784; *see also , Jensen v Zoning Bd. of Appeals,* 130 AD2d 549 [principles of res judicata and collateral estoppel apply to the quasi-judicial determinations of the zoning board of appeals]; *Matter of Freddolino v Village of Warwick Zoning Bd. of Appeals,* 192 AD2d 839 [same]). Significantly, the Court of

Appeals has expressly stated that "a zoning board of appeals performs a quasi-judicial function when considering applications for variances and special exceptions" *(see, Knight v Amelkin,* 68 NY2d 975, 977).

Moreover, in *Park Knoll Assocs. v Schmidt (supra,* at 171-172), this Court set forth the following guidelines for determining whether an administrative proceeding constitutes a quasi-judicial proceeding in which pertinent statements are afforded an absolute privilege: "The shield of absolute immunity extends to the proceedings of administrative agencies where such proceedings are adversarial, result in a determination based upon the application of appropriate provisions in the law to the facts and which are susceptible to judicial review * * * Further, we note that in deciding whether the communications under review should be afforded an absolute privilege, our inquiry must not only consider the particular characteristics of the proceeding in which they were made, it must also focus upon the particular policy considerations attendant upon such grant" *(accord, Herzfeld & Stern v Beck,* 175 AD2d 689, *supra; Stilsing Elec. v Joyce,* 113 AD2d 353, 356, *supra; see also, Kitchner v State of New York,* 82 Misc 2d 858, *supra; Lipton v Friedman,* 2 Misc 2d 165, *supra).*

It cannot be disputed that the proceedings in question before the Board on the plaintiff's application for a variance were adversarial in nature. An adversarial proceeding is one which is contested *(see,* Ballentine's Law Dictionary 40 [3d ed 1969]), and there is no doubt that the plaintiff's application was contested. In particular, it was the defendant who objected to the granting of variances at the hearing.

In order to make a decision to grant the variances requested by the plaintiff, the Board, of necessity, had to apply the relevant law to the facts before it. Specifically, the Board needed to be familiar with the various zoning laws and ordinances governing the subject property and the legal principles for granting or denying variances as well as the particular facts brought forward by the plaintiff and the surrounding neighbors, including the defendant. Additionally, the Board was required to make findings which were supported by the evidence in the record *(see,* 2 Anderson, New York Zoning Law and Practice § 25.01, at 319; § 25.31, at 352 [3d ed 1984] ["The board of zoning appeals is an administrative body of limited jurisdiction. Its authority may be exercised only within bounds prescribed by statute or ordinance, and it may

act only after the basis for an action has been established by evidence adduced at a public hearing"]).

Finally, the determination of the Board was subject to judicial review pursuant to CPLR article 78: "Actions of the board of zoning appeals are subject to review by the courts, to determine whether the board acted within the limits of its jurisdiction, whether the standards imposed by statute and ordinance were respected, whether the procedural rights of the litigants were observed, and whether the board was chargeable with any abuse of its discretion. In short, it is the task of the courts to police the boards" (2 Anderson, New York Zoning Law and Practice § 25.31, at 352 [3d ed 1984]).

Accordingly, under the guidelines as set forth by *Park Knoll (supra)*, it becomes apparent that hearings before a board of zoning appeals which are adversarial in nature, result in an application of relevant law to the facts and are subject to judicial review.

Since the proceedings of the Zoning Board of Appeals in this case were quasi-judicial in nature, it follows that an absolute privilege should attach to those statements made during the course of the proceedings and which were material and relevant to the proceedings *(see, Park Knoll Assocs. v Schmidt, supra; Toker v Pollak,* 44 NY2d 211; *Herzfeld & Stern v Beck,* 175 AD2d 689, *supra; Kitchner v State of New York,* 82 Misc 2d 858, *supra).*

The principal authority cited by the appellant for his arguments that the Board is not a quasi-judicial body, *Ellish v Goldman* (117 NYS2d 867), is not persuasive. Although the court in *Ellish* recognized the general rule that anything a witness says in a court or other tribunal having the attributes of a court is absolutely privileged, it concluded that a zoning board was not sufficiently judicial in character as to warrant or deserve the benefit of absolute privilege as an inducement to witnesses to appear before it. However, the *Ellish* decision is at odds with the reasoning of the cases which have since applied the absolute privilege to proceedings before various administrative boards, and of the cases which have since held that a zoning board of appeals performs a quasi-judicial function when considering an application for a variance. Therefore, it is highly questionable whether the *Ellish* decision is still good law.

Although the defendant herein was not considered a party to the proceedings on the variance application *(see, Ottinger v*

*Arenal Realty Co.,* 257 NY 371; *Siegel v Lassiter,* 6 AD2d 879; 12 NY Jur 2d, Buildings, § 316), she clearly had a role in the proceedings as a witness with respect to the application. As an adjacent landowner, not only did the defendant have an obvious interest in the proceedings, but she also clearly fell within the class of persons entitled to judicial review of the Zoning Board's determination *(see,* CPLR 7802 [d]) or to inter- vene in any proceeding pursuant to CPLR article 78 initiated by a disappointed applicant *(see, Matter of Allan v McChesney,* 194 AD2d 785). Moreover, the defendant's statements were material and pertinent because they related to the issues before the Zoning Board *(see, e.g., Grasso v Mathew,* 164 AD2d 476, 479, *supra* ["In the context of a legal proceeding, state- ments by parties and their attorneys are absolutely privileged if, by any view or under any circumstances, they are pertinent to the litigation * * * No action for defamation exists unless the statement is so obviously impertinent as not to admit discussion of pertinence, and so needlessly defamatory as to warrant the inference of express malice and a motivation solely to defame * * * The absolute privilege embraces any- thing that may possibly or plausibly be relevant or pertinent, with the barest rationality, divorced from any palpable or pragmatic degree of probability * * * This test of pertinency is extremely liberal"]). Thus her statements are protected by an absolute privilege, notwithstanding the plaintiff's claim that her participation and testimony were voluntary.

Furthermore, by affording an absolute privilege to material and pertinent statements made by the participants in proceed- ings before a zoning board of appeals, we are also advancing the important public policy of encouraging the active partici- pation of the citizenry in issues affecting the welfare of the community. It should be noted in this regard that, effective January 1, 1993, new sections 70-a and 76-a of the Civil Rights Law serve to protect a citizen who is subjected to a SLAPP ("Strategic Lawsuits Against Public Participation") suit aris- ing out of his or her exercising his or her right of public petition and/or participation. The legislative findings and purpose, as stated in the law, are:

"The legislature hereby declares it to be the policy of the state that the rights of citizens to participate freely in the public process must be safeguarded with great diligence. The laws of the state must provide the utmost protection for the free exercise of speech, petition and association rights, particu-

larly where such rights are exercised in a public forum with respect to issues of public concern.

"The legislature further finds that the threat of personal damages and litigation costs can be and has been used as a means of harassing, intimidating or punishing individuals, unincorporated associations, not-for-profit corporations and others who have involved themselves in public affairs" (L 1992, ch 767, § 1; *see also, Matter of Entertainment Partners Group v Davis,* 198 AD2d 63, 64 ["We note also that New York State public policy strongly disfavors SLAPP suits designed to chill the exercise of a citizen's right to petition the government or appropriate administrative agency for redress of a perceived wrong"]).

However, although we are affirming the order dismissing the complaint, we reject the defendant's request for the imposition of sanctions against the plaintiff *(see,* CPLR 8303-a).

Accordingly, the order appealed from is affirmed.

BRACKEN, J. P., COPERTINO and SANTUCCI, JJ., concur.

Ordered that the order is affirmed, with costs.