993 P.2d 1119

**Robert BURNS, Brent Hickey, Sedona Heights, L.L.C., Plaintiffs–Appellants,**

**v.**

**Paul DAVIS and Jane Doe Davis, husband and wife, Robert Earle and Jane Doe Earle, husband and wife, Gary Byer and Jane Doe Byer, husband and wife, Defendants–Appellees.**

No. 1 CA–CV 98–0422.

Court of Appeals of Arizona, Division 1, Department A.

Aug. 10, 1999.

Review Denied Feb. 8, 2000.

---

Marton & Hall, P.A. by Kraig J. Marton, Phoenix, Attorneys for Plaintiffs–Appellants.

Broening Oberg Woods Wilson & Cass by Donald Wilson, Jr. Lori Kirsch–Goodwin, Phoenix, Attorneys for Defendants–Appellees Earle.

William J. Downey, P.C. by William J. Downey Elan S. Mizrahi, Phoenix, Attorneys for Defendants–Appellees Byer.

Beale & Micheaels, P.C. by John A. Micheaels Thomas B. Dixon, Phoenix, Attorneys for Defendants–Appellees Davis.

## OPINION

PATTERSON, Judge.

¶ 1 Plaintiffs (Appellants) appeal from the dismissal of their defamation complaint. The trial court found that the statements at issue were made by witnesses and an attorney at a board of adjustment meeting and as such were within a quasi-judicial proceeding; therefore, the trial court held the statements were absolutely privileged. Although presented with a very brief record, we have reviewed its contents carefully and our conclusions are as follows: 1) a qualified privilege existed for the statements made at the meeting, and 2) the dismissal of the action as a matter of law was premature because the trial court had not received testimony, reviewed it, and ruled on a record developed by the testimony. For these reasons, we re-

verse and remand for proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 Sedona Heights, L.L.C., through its managing member Brent Hickey, sought a zoning variance on a lot in the city of Sedona. Nearby property owners, including Paul Davis and Gary Byer, opposed the variance. At the Sedona Board of Adjustment public meeting, Davis and Byer spoke, as did legal counsel representing Davis. After the meeting, Sedona Heights, L.L.C., Brent Hickey and Robert Burns (collectively "Sedona Heights") filed suit against Paul Davis, Gary Byer, and Davis' legal counsel, Robert Earle (collectively "the Davis group"), for statements made by the Davis group at the meeting. Sedona Heights asserted that these statements defamed them.

¶ 3 Upon the Davis group's motion, the trial court dismissed the action, finding the statements at issue to be absolutely privileged because the nature of the meeting was quasi-judicial. We have jurisdiction pursuant to Arizona Revised Statutes Annotated (A.R.S.) section 12–2101(B).

## ISSUES

1. Were the statements made to the Sedona Board of Adjustment subject to an absolute or a qualified privilege?
2. Must this matter be remanded to the trial court, or may this Court review and summarily dismiss Sedona Heights' complaint as being protected speech, and not defamatory as a matter of law?

## DISCUSSION

### A. Standard of Review

¶ 4 In a defamation case, once an immunity defense has been raised, defining the scope of a speaker's immunity is a legal question for the court. *See Chamberlain v. Mathis,* 151 Ariz. 551, 554, 729 P.2d 905, 908 (1986). The privilege[1] may be either abso-

---

1. The terms privilege and immunity are used interchangeably in the defamation context. *See Ashton–Blair v. Merrill,* 187 Ariz. 315, 317 n. 2, 928 P.2d 1244, 1246 n. 2 (App.1996) (terms of absolute privilege and absolute immunity are interchangeable).

lute or qualified. *See id.; see also* Restatement (Second) of Torts (Restatement) §§ 583–612 (1977). Because classification of the privilege is a question of law, we review it *de novo. Ashton–Blair,* 187 Ariz. at 317, 928 P.2d at 1246; *see also* Restatement § 619. While a qualified privilege protects the speaker only for those statements made in good faith, an absolute privilege is much broader, protecting the speaker regardless of his "motive, purpose, or reasonableness." *Green Acres Trust v. London,* 141 Ariz. 609, 613, 688 P.2d 617, 621 (1984). A witness is generally afforded an absolute privilege when testifying in a judicial proceeding. *Todd v. Cox,* 20 Ariz.App. 347, 348, 512 P.2d 1234, 1235 (1973).

## B. Determining Absolute or Qualified Privilege

■ ¶ 5 To determine if a privilege, absolute or qualified, exists, we first examine the applicable case law. If no clear answer is obtained, then we look to the Restatement for guidance. *See Bruce v. Chas Roberts Air Conditioning, Inc.,* 166 Ariz. 221, 227, 801 P.2d 456, 462 (App.1990) (appellate courts follow Restatement only absent case law to the contrary). We do this because "[a]lthough the Arizona courts generally follow the *Restatement* of the law, they do not do so if a different rule has been pronounced in prior court decisions or legislative enactments." *Wilcox v. Waldman,* 154 Ariz. 532, 536, 744 P.2d 444, 448 (App.1987).

¶ 6 Here, the trial court held that the statements at issue were made within a quasi-judicial proceeding and therefore were absolutely privileged. The trial court cited two cases to support its legal finding of absolute privilege: *Allan and Allan Arts Ltd. v. Rosenblum,* 201 A.D.2d 136, 615 N.Y.S.2d 410 (1994), and *Arkules v. Board of Adjustment,* 151 Ariz. 438, 728 P.2d 657 (App.1986).

¶ 7 *Allan* is a factually similar New York defamation case involving witness statements made to a zoning board of appeals. 615 N.Y.S.2d at 411. In *Allan,* the court held that the proceedings of a zoning board of appeals on an application for a variance were quasi-judicial in character and thus deserved the benefit of an absolute privilege, reinforc-

ing a New York rule that witness statements made before other administrative boards are quasi-judicial proceedings and are absolutely privileged. *Id.* at 412. The *Allan* court found that the zoning hearing constituted a quasi-judicial proceeding because the proceedings: 1) were adversarial; 2) resulted in a determination based upon the application of law to the facts, and; 3) were susceptible to judicial review. Additionally, the court stated that policy considerations were a factor. *Id.* at 413 (citing *Park Knoll Assoc. v. Schmidt,* 89 A.D.2d 164, 454 N.Y.S.2d 901 (1982), *rev'd on other grounds,* 59 N.Y.2d 205, 464 N.Y.S.2d 424, 451 N.E.2d 182 (1983)).

¶ 8 The trial court cited *Arkules* for its conclusion that an Arizona board of adjustment proceeding is also quasi-judicial. 151 Ariz. at 440, 728 P.2d at 659. Therefore, applying the *Allan* holding that quasi-judicial proceedings require an absolute privilege, the trial court concluded that the statements at issue were absolutely privileged.

¶ 9 However, authority from New York also exists which determines that the interest served by zoning hearings does not rise to the level of absolute protection. Instead, a qualified immunity may be most appropriate. For example, in *Ellish v. Goldman,* 117 N.Y.S.2d 867, 870 (N.Y.Sup.Ct.1952), the New York Supreme Court found that a qualified privilege applied to statements made to a zoning board of appeals. The court focused on whether the zoning board had judicial attributes. *Id.* at 869. The court concluded that although the board might have some quasi-judicial powers, it was not sufficiently judicial in nature:

> The mere fact that a body or an officer vested with discretion has the power to conduct a hearing in which counsel are sometimes heard to argue, and the power to summon witnesses and administer oaths, does not constitute such a hearing before the body or officer a judicial proceeding so as to give persons testifying therein an absolute privilege.

*Id.* at 869–70.

¶ 10 The *Allan* court, however, declined to follow *Ellish,* creating a split of authority in

New York. *Allan*, 615 N.Y.S.2d at 414. Nonetheless, although the *Allan* court questioned "whether the *Ellish* decision is still good law," *Ellish* has never been overturned. *Id.* In a more recent decision, the New York Supreme Court, Appellate Division, relying in part on *Allan*, found that an absolute privilege applied to a hearing challenging the termination of a police chief. *See Romeo v. Village of Fishkill*, 248 A.D.2d 700, 670 N.Y.S.2d 772, 772–73 (1998). Focusing on the specific facts of the case, the court stated that the hearing "bore sufficient indicia of a judicial proceeding to permit invocation of the absolute privilege." *Id.* at 773. Thus, the court used the *Allan* ruling not as a hard and fast rule, but as a guide for weighing and determining the judicial nature of a proceeding.

¶ 11· Other state courts have found that a qualified immunity is most appropriate for statements made during zoning hearings. In *Supry v. Bolduc*, 112 N.H. 274, 293 A.2d 767 (1972), the New Hampshire Supreme Court stated:

> [T]he availability of an absolute privilege must be reserved for those situations where the public interest is so vital and apparent that it mandates complete freedom of expression without inquiry into a defendant's motives.

*Id.* at 769 (statements made before a zoning board of adjustment were only entitled to a qualified privilege) (citing W.L. Prosser, Law of Torts § 114, at 776 *et seq.* (4th ed.1971)).

¶ 12 The New Jersey Supreme Court also addressed this issue when it overturned an appellate court decision in *J.D. Construction Corporation v. Isaacs*, 95 N.J.Super. 122, 230 A.2d 168 (1967), *rev'd and order vacated*, 51 N.J. 263, 239 A.2d 657 (1968). The appellate court determined that a zoning board of adjustment meeting considering an application for a variance and a special use permit was a quasi-judicial proceeding, and therefore statements made at the meeting were absolutely privileged. *J.D. Constr. Corp.*, 230 A.2d at 172. The court stated that it was "in square disagreement with the reasoning of *Ellish v. Goldman*." *Id.* On review, the New Jersey Supreme Court acknowledged that the absolute privilege is accorded to certain quasi-judicial proceedings. *J.D. Constr. Corp.*, 239 A.2d at 660. The court further acknowledged that in general "[a] governing body, in passing upon a recommendation for a ... variance ..., acts in a quasi-judicial capacity." *Id.* Nonetheless, the court reversed the appellate court's holding, stating that the extent of the privilege to be accorded should be determined by the factual circumstances:

> The nature of the rather limited issued (sic) before the governing body and the fact of a non-trial-type hearing in an essentially political arena, sometimes highly charged with community feeling, can well, and we believe frequently do, lead to a meeting climate which can hardly be called quasi-judicial. The nature of any privilege to be afforded may depend on individual circumstances and the matter of pertinency and relevancy of remarks or contentions to the questions legitimately before the governing body may control. In this connection ... we do not know ..., what defendant said at the meeting....
>
> We are convinced that the policy question of whether an absolute privilege should be afforded ... ought not to be determined abstractly in a factual vacuum or merely on vague allegations in a complaint.

*Id.* at 661 (citations omitted).

¶ 13 Appellants argue that the correct authority is found in two Arizona defamation cases: *Lewis v. Oliver*, 178 Ariz. 330, 873 P.2d 668 (App.1993), and *Melton v. Slonsky*, 19 Ariz.App. 65, 504 P.2d 1288 (1973). In these cases, this court discounted the importance of the quasi-judicial classification for administrative proceedings. *Lewis*, 178 Ariz. at 334, 873 P.2d at 672; *Melton*, 19 Ariz.App. at 68, 504 P.2d at 1291. Instead, competing interests and policies, derived from the Restatement, were balanced: the protection of the defamed person's reputation with those occasions when it is important that speakers "speak freely and fearlessly," either for their own interest, for a third person's interest, or for the public interest. *Melton*, 19 Ariz.App. at 67, 504 P.2d at 1290; *see also* Restatement § 594 cmts. b, e (discussing the competing policies).

¶ 14 In *Melton*, we found the competing policies best served by the qualified privilege for statements made by a volunteer witness who was neither sworn in nor subpoenaed prior to speaking at a public hearing before an administrative board. We concluded that "both policies can best be served not by granting or denying an absolute privilege based upon ... 'quasi-judicial' powers, but by extending a qualified or defeasible privilege." 19 Ariz.App. at 68, 504 P.2d at 1291 (statements made to State Liquor Board regarding liquor license proceeding). We came to the identical conclusion in *Lewis* for statements made about a public official before an administrative board. We found that a qualified, or defeasible, privilege was appropriate for statements made to the Department of Transportation regarding a Federal Aviation Administration (FAA) inspector. 178 Ariz. at 334, 873 P.2d at 672.

■ ¶ 15 This qualified privilege is a compromise that reflects a need to serve both of the competing policies previously noted. It is necessary as a matter of public interest that persons involved in judicial proceedings be allowed to speak freely, uninfluenced by the threat of being brought into a subsequent private suit for defamation. *Melton*, 19 Ariz. App. at 67, 504 P.2d at 1290. "The function of witnesses is of fundamental importance in the administration of justice," because witnesses ensure that a court's final judgment is based on full disclosure of the facts. Restatement § 588 cmt. a. This is especially true in cases of compulsory testimony, where a witness may be subject to punishment for contempt for failure to testify or criminal prosecution for perjury. *Id.* However, public policy dictates that this need to ensure complete and truthful testimony must be balanced against extending protection to administrative hearings in which a volunteer may defame someone "under the guise of protecting the public." *Melton*, 19 Ariz.App. at 68, 504 P.2d at 1291 (quoting *Meyer v. Parr*, 69 Ohio App. 344, 37 N.E.2d 637, 640 (1941)).

■ ¶ 16 For a qualified privilege, the interest that the speaker seeks to vindicate is of an "intermediate degree of importance" in relation to protection of the defamed person's reputation. *Green Acres Trust*, 141 Ariz. at 616, 688 P.2d at 624; *see also* Restatement § 594 cmt. b (interest must be of "sufficient significance"). For an absolute privilege, however, the socially important interest protected by the speaker is of heightened importance. *See Green Acres Trust*, 141 Ariz. at 613, 688 P.2d at 621 (absolute privilege for "socially important interests" regardless of speaker's motive, purpose or reasonableness); *see also* Restatement § 588 cmt. a (discussing the role of witness in the administration of justice, which is of "fundamental importance").

¶ 17 Although policy and our analysis to this point tend to lead us toward the conclusion that the proceeding was subject to a qualified privilege, we are nonetheless compelled to examine the Restatement as well for clarification. We find this necessary because Arizona case law is not clearly settled on this subject. *Compare Green Acres Trust*, 141 Ariz. at 615, 688 P.2d at 623 (statements at press conference regarding litigation made by party's attorney were not sufficiently related to judicial proceedings to be absolutely privileged), *Carroll v. Robinson*, 178 Ariz. 453, 457, 874 P.2d 1010, 1014 (App.1994) (qualified privilege applicable in proceeding to revoke license of child care provider suspected of sexual misconduct), *Lewis*, 178 Ariz. at 335, 873 P.2d at 673 (airline president's statements against FAA investigator were qualifiedly privileged), *Miller v. Servicemaster by Rees*, 174 Ariz. 518, 520, 851 P.2d 143, 145 (App.1992) (statements regarding sexual harassment made to woman's employer were qualifiedly privileged), and *Melton*, 19 Ariz.App. at 68, 504 P.2d at 1291 (volunteer witness' statements made to State Liquor Board at public meeting subject to qualified privilege), *with Ashton–Blair*, 187 Ariz. at 317, 928 P.2d at 1246 (reporting of unethical attorney conduct to Arizona State Bar sufficiently judicial and of such importance to justify absolute privilege), and *Bailey v. Superior Ct.*, 130 Ariz. 366, 368, 636 P.2d 144, 146 (App.1981) (proceedings of Commission on Judicial Qualifications sufficiently judicial to justify absolute privilege and supported by public policy).

■ ¶ 18 When the law is not settled on a particular subject, we look to the Restate-

ment with favor. *Spettigue v. Mahoney,* 8 Ariz.App. 281, 283, 445 P.2d 557, 559 (1968).

## C. Restatement (Second) of Torts

█ ¶ 19 Arizona views the Restatement as authority for resolving questions concerning rules in defamation cases. *Sanchez v. Coxon,* 175 Ariz. 93, 95, 854 P.2d 126, 128 (1993). The Restatement addresses the concern that the potential for abuse of a privilege exists, and therefore a privilege's scope is generally limited. A privilege should be exercised only for the purpose for which it is given, and care must be taken to ensure that the harm done to others through use of the privilege is no more "than is necessary to accomplish the end for which the privilege is given." Restatement § 592A topic 3, tit. A.

¶ 20 Toward that end, the Restatement recognizes not only absolute privileges but also conditional privileges which give rise to a qualified immunity. Under a conditional privilege, we will not hold a defendant liable for publishing defamatory matter concerning another if the publication occurs "upon an occasion that makes it conditionally privileged" and the defendant does not abuse the privilege. *Id.* at § 593.

¶ 21 Absolute privileges are based "upon a recognition of the necessity that certain persons, because of their special position or status, should be as free as possible from fear that their actions in that position might have an adverse effect upon their own personal interests." *Id.* at § 584 tit. B. Thus, the Restatement extends absolute immunity in limited specified situations to judicial officers, attorneys at law, parties to judicial proceedings, witnesses in judicial proceedings, jurors, legislators, witnesses in legislative proceedings, executive and administrative officers, husbands and wives, and publications required by law. *Id.* at §§ 585–92A. Public policy dictates that true information is desirable and should be given when needed for the protection of certain public interests, interests of a third party, or the speaker's own interests. *Id.* at § 584 tit. B. Extending an

absolute privilege to a speaker promotes that public policy.

¶ 22 The Restatement focuses not on whether a proceeding is quasi-judicial but whether the proceeding was sufficiently judicial to merit the heightened protection of the absolute privilege. *See* Restatement section 588.[2] Section 588 states, "A witness is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding or as part of a judicial proceeding in which he is testifying, if it has some relation to the proceeding."

█ ¶ 23 Here, we are not presented with a claimed immunity for statements made in a purely judicial proceeding. The statements at issue were made by witnesses and an attorney at a board of adjustment meeting. Nonetheless, this proceeding has some indicia of a judicial proceeding. Thus, we must consider factors that help us determine whether the proceeding was sufficiently judicial to merit the heightened protection of an absolute privilege.

¶ 24 We first note that "[j]udicial proceedings include all proceedings in which an officer or tribunal exercises judicial functions." *Id.* at § 588 cmt. d. However, the Restatement provides limited guidance as to the characteristics of judicial functions. Determining a question of jurisdiction, exercising jurisdiction over the subject matter, and exercising discretion may be examples of judicial functions. *Id.* at § 585 cmts. c, f. Nonetheless, the Restatement cautions that "[i]t is not within the scope of this Restatement to define or enumerate the characteristics and incidents of the judicial function." *Id.* at § 585 cmt. c.

█ ¶ 25 We find Restatement section 588 more helpful. Comment a of section 588 states that judicial proceedings require compulsory attendance of all witnesses. Although a board of adjustment has authority to administer oaths and take evidence, it does so at its own discretion. *See East*

---

**2.** Appellee Earle legally represented Appellee Davis at the meeting, suggesting that Restatement section 586 is applicable regarding the attorney representation. Nonetheless, the analy-

ses for sections 586 and 588 are sufficiently similar that we do not address each section separately.

*Camelback Homeowners Ass'n v. Arizona Found. for Neurology and Psychiatry,* 18 Ariz.App. 121, 128, 500 P.2d 906, 913 (App. 1972) (finding nothing in A.R.S. §§ 9–464(C) or 109(A)(1) expressly requiring that witnesses be under oath). Furthermore, no one has asserted that the Board administered oaths in this meeting, or that anyone testified by subpoena. Additionally, a judicial proceeding provides protections for the integrity of the judicial process and disincentives to defame others, such as the risk of perjury or contempt for untrue statements. *See* Restatement § 588 cmt. a (discussing protections of judicial proceedings). These protections were not present here. No subpoenas were issued, no oaths were administered, and there was no risk of perjury or contempt, any of which could have resulted in our finding that this was a judicial proceeding.

¶ 26 Additionally, other attributes of a judicial setting were not present. Although the participants may have thought the proceedings were adversarial, no trial-like advocacy occurred between the landowners which also would have resulted in the Board of Adjustment taking on the role of a court. *See generally* Ariz. R. Civ. P. (Rules) (providing the rules for civil actions). Davis indicated that he was represented by counsel, yet he voluntarily spoke on his own behalf. No one asserted that the Board allowed direct or cross-examination of the witnesses, a critical protection available in judicial proceedings. *See* Rule 43. Accordingly, the indicia of a judicial setting are simply lacking.

¶ 27 Additionally, while an aggrieved party at a board meeting is allowed to request special action review, judicial review is not guaranteed. *See* A.R.S. § 9–462.06(K). Therefore, this important judicial protection may not be available to those participants. For these reasons, we do not find this Sedona Board of Adjustment meeting sufficiently judicial in character to merit the heightened protection of absolute privilege for the witness' statements.

¶ 28 We also find no overriding societal interest so vital as to require absolute privilege, particularly when balanced with the risk of harm to another's reputation. *See* Restatement § 584 tit. B (discussing the need for absolute privileges). Instead, we conclude that the better approach is to recognize a conditional privilege. We reiterate that a conditional privilege allows for the balancing of competing interests. It is a method "for balancing the interest of the defamed person in the protection of his reputation against the interests of the publisher, of third persons and of the public in having the publication take place." *Id.* at § 594 cmt. b.

¶ 29 We find Restatement section 594 [3] applicable, allowing qualified immunity for a speaker when seeking to protect his own interests, as well as those of others, when speaking to an audience that serves the "lawful protection of the interest." *Id.* at § 594(b). The Davis group, as the publisher, perceived the requested variance as a threat to its property values. The Restatement states that a publisher's pecuniary interest in land is sufficient to justify the qualified privilege. *Id.* at § 594 cmt. f. Further, the Sedona Board of Adjustment was the recipient of the publication. Applying Restatement section 594, the Board of Adjustment was clearly an entity that could serve the Davis group in the protection of its pecuniary interest.

¶ 30 We therefore determine that the statements at issue were qualifiedly privileged. We conclude that persons who appear before an Arizona board of adjustment meeting have a qualified privilege bestowed upon them.

**D. Limitations on the Qualified Privilege**

¶ 31 We must remand, however, because our analysis requires determining not only whether a qualified privilege existed but whether that privilege was abused. *See Green Acres Trust,* 141 Ariz. at 616, 688 P.2d

---

**3.** The full text of Restatement Section 594 reads:
§ 594. Protection of the Publisher's Interest
An occasion makes a publication conditionally privileged if the circumstances induce a correct or reasonable belief that

(a) there is information that affects a sufficiently important interest of the publisher, and
(b) the recipient's knowledge of the defamatory matter will be of service in the lawful protection of the interest.

at 624. If abused, the privilege is forfeited and the speaker is subject to liability. *See Lewis,* 178 Ariz. at 335, 873 P.2d at 673; Restatement § 599. For example, even though qualifiedly privileged, statements at hearings are not protected if they become mere character assassination. *See Melton,* 19 Ariz.App. at 68, 504 P.2d at 1291.

¶ 32 In *Melton,* this court stated that the privilege may be forfeited if: 1) a defendant indulges in "irrelevant defamatory matter which has no bearing on the matter under consideration"; 2) a defendant publicizes "to any person other than those whose hearing of [the matter] is reasonably believed to be necessary or useful for furtherance of the public interest," or; 3) "the publication is not made primarily for the purpose of furthering the public interest which is entitled to protection." *Id.*

¶ 33 This indicates that a multi-step analysis is necessary. We have synthesized the process as follows. First, we have determined here that statements made before an Arizona board of adjustment meeting are qualifiedly privileged.

¶ 34 Second, we find that in order to avoid forfeiture of the privilege, the testimony must have some relation to the subject proceeding and should be made primarily for the purpose of furthering the public interest entitled to protection. *See Todd,* 20 Ariz. App. at 349, 512 P.2d at 1236 (testimony in relation to the subject of the litigation) and *Melton,* 19 Ariz.App. at 68, 504 P.2d at 1291 (primarily for public interest purpose). The qualified privilege fails as a defense to defamation absent a proper purpose. *Green Acres Trust,* 141 Ariz. at 616, 688 P.2d at 624. *Cf. Chamberlain,* 151 Ariz. at 555, 729 P.2d at 909 ("Both qualified and absolute immunity protect only acts reasonably within the [public official's] discretionary authority.").

¶ 35 Third, the speaker must not abuse the privilege. Arizona courts have held that a plaintiff may establish abuse of a conditional privilege by demonstrating the existence of either excessive publication or actual malice. *Green Acres Trust,* 141 Ariz.

at 616, 688 P.2d at 624 (Supreme Court); *Lewis,* 178 Ariz. at 335, 873 P.2d at 673 (Court of Appeals). An abuse through excessive publication results from "publication to an unprivileged recipient not reasonably necessary to protect the interest upon which the privilege is grounded." *Lewis,* 178 Ariz. at 335, 873 P.2d at 673.[4] An abuse through actual malice occurs when the speaker makes a statement knowing it is false or with reckless disregard of whether it is false. *Id.* at 335, 873 P.2d at 673.

¶ 36 The burden falls upon Sedona Heights as the plaintiff to establish that any members of the Davis group abused this qualified privilege, and "[u]nless only one conclusion can be drawn from the evidence, the determination of the question whether the privilege has been abused is for the jury." *Melton,* 19 Ariz.App. at 68, 504 P.2d at 1291 (quoting W.L. Prosser, *Law of Torts* § 115, at 796 (4th ed.1971)); *Green Acres Trust,* 141 Ariz. at 616, 688 P.2d at 624 ("Whether a privileged occasion arose is a question of law for the court, and whether the occasion for the privilege was abused is a question of fact for the jury").

¶ 37 In summary, the Davis group has a defense of qualified privilege which may be rebutted by Appellants Sedona Heights upon a showing of abuse of that privilege. We find that if Sedona Heights can establish abuse of the qualified privilege, then the defense is no longer available to the Davis group, and a defamation analysis must follow.

**E. Statements Claimed Not Defamatory as a Matter of Law**

¶ 38 Appellee Byer of the Davis group asserts that even if the statements at issue are not subject to an absolute or qualified privilege, we should affirm dismissal of the action against him. He argues that the dismissal can be upheld as a matter of law because the statements do not assert objective fact and cannot be proven false. To support his argument, he cites *Yetman v. English,* 168 Ariz. 71, 811 P.2d 323 (1991), as establishing this two-pronged test to deter-

---

4. Excessive publication does not apply to public officials. *Id.* at 336, 873 P.2d at 674.

mine when statements are actionable as defamation.

¶ 39 Statements that can be interpreted as nothing more than rhetorical political invective, opinion, or hyperbole are protected speech, but false assertions that state or imply a factual accusation may be actionable. *Id.* at 77, 811 P.2d at 329. The trial court first decides whether, under all the circumstances, a statement is even capable of a defamatory meaning. *Id.* at 79, 811 P.2d at 331. If so found, the jury then determines whether the defamatory meaning was actually conveyed. *Id.* In most instances, it is for the jury to determine whether an ordinary reader or listener would believe the statement to be a factual assertion, mere opinion or hyperbole. *Id.* at 78, 811 P.2d at 330. The meaning of words and statements should not be construed in isolation; rather, consideration should be given to the context and all surrounding circumstances, including the impression created by the words used and the expression's general tenor. *Id.* at 76, 811 P.2d at 328. If the jury finds that a defamatory statement of objective fact (beyond mere hyperbole) exists, it should then "consider actual damage to [the plaintiff's] reputation in the real world by measuring the defamatory aspect of [the statement] by its natural and probable effect on the mind of the average recipient." *Id.* at 77, 811 P.2d at 329.

¶ 40 We decline to affirm dismissal of this defamation action as a matter of law because such dismissal at this point would be premature. As an appellate court, we review rulings of the trial court. *Farmers Ins. Co. v. Norden,* 25 Ariz.App. 296, 299, 543 P.2d 134, 137 (1975). When a trial court has not ruled on an argument, the appellate court should address it only when the record is so fully developed that the facts and inferences are perfectly clear. *Villegas v. Transamerica Fin. Serv., Inc.,* 147 Ariz. 100, 103, 708 P.2d 781, 784 (App.1985).

¶ 41 Here, the trial court did not rule on the matter and no well-developed record exists. Consequently, we decline to decide this issue until such time as the trial court has developed the record and ruled accordingly.

## CONCLUSION

¶ 42 First, we find that allegedly defamatory statements made during a City of Sedona Board of Adjustment public meeting are subject to a qualified, rather than an absolute, privilege. The privilege is available in this matter unless the plaintiff can rebut it by showing abuse. If the plaintiff can establish abuse of the qualified privilege, the defendant loses this privilege as a defense, and the plaintiff then may pursue the defamation claim on its merits.

¶ 43 Second, we as an appellate court will not reach matters or issues presented for the first time on appeal. We thus decline to uphold dismissal of the defamation action against Appellee Byer by ruling at this time as a matter of law on the defamatory character of any statements. Ruling on specific statements when the record has not been developed in the trial court, and where statements have not been reviewed in their full context, would be premature.

¶ 44 The judgment of the trial court is set aside and the case is remanded for further proceedings consistent with this opinion.

CONCURRING: JEFFERSON L. LANKFORD Presiding Judge, Department A, and EDWARD C. VOSS, Judge.

## APPENDIX

Because the actual statements which are the subject of this suit are not reviewed within this opinion and are not cited in the appellate briefs, we have reviewed the defamation complaint and wish to publish the statements here for our record. We reiterate that mere opinion, hyperbole, and political invective are protected speech and as such do not constitute defamation. Additionally, speech must be viewed in its entire context, and thus we caution against conclusions based upon viewing a single word or statement without considering the circumstances in which that word or statement was published. The complaint, in relevant part, states:

"9. At that time, Earle, Davis, and Byer all made false statements of and concerning Plaintiffs.

10. Specifically, Davis made the following statements, or statements like the following:

a. that plaintiffs had engaged in 'abuse of process;'

b. that Burns was trying to 'use' the Board of Adjustment to 'victimize' Davis;

c. that Burns and the plaintiffs were trying to wrongfully 'coerce' Davis to do what they wanted;

d. by implication, that the plaintiffs were misrepresenting their purpose and themselves in seeking a zoning variance; and

e. that Hickey said certain things to Davis about his intent which were different than the intent expressed to the Board.

11. At the same meeting, Earle made the following statements, or statements like the following about the plaintiffs:

a. that Brent Hickey was not 'authorized' to sign or to act with respect to the Zoning Adjustment application;

b. that Burns, in the area of real estate, 'puts Charles Keating into a kindergarten status;'

c. that Burns has been charged with a 'variety' of 'criminal wrongs during the past number of years;'

d. that Burns 'is actually in control of this property;'

e. that Burns and his representatives made misrepresentations to Davis;

f. that plaintiffs are attempting to wrongfully and illegally 'force' Davis to do what they want;

g. that plaintiffs put 'pressure' on Davis and threatened him with 'harassment' and that plaintiffs engaged in 'arm-twisting' of Davis.

12. At the same meeting, Byer made the following statements, or statements like the following about the plaintiffs:

a. that Plaintiffs' actions were tainted;

b. that he was a 'witness' to the 'taintedness' of plaintiffs['] actions, and 'I just absolutely became nauseated;'

c. that the plaintiffs engaged in 'arm-twisting' of Davis;

d. that he was a witness to 'dirty pool;'

e. that plaintiffs had engaged in an 'abuse of process;' and

f. that plaintiffs were attempting to wrongfully 'coerce' Davis to do what they wanted."