131 P.3d 487

Allan SOBOL d/b/a Quick and
Legal Paralegal Services,
Plaintiff/Appellant,

v.

Camila ALARCON, Defendant/Appellee.

No. 1 CA–CV 04–0720.

Court of Appeals of Arizona,
Division 1, Department T.

March 30, 2006.

316

Allan Sobol, In Propria Persona.

Community Legal Services, By George H. McKay, Phoenix, Attorneys for Defendant/Appellee.

**OPINION**

NORRIS, Judge.

¶ 1 This appeal arises out of the dismissal of a defamation action filed by a certified legal document preparer, Plaintiff/Appellant Allan Sobol, against an attorney, Defendant/Appellee Camila Alarcon. The dispositive issue before us is whether Alarcon is absolutely immune from civil liability arising out of a letter she sent to the State Bar of Arizona accusing Sobol of the unauthorized practice of law and other improper conduct, which the State Bar then forwarded to the Board of Legal Document Preparers. We hold that she is and affirm the superior court's dismissal of Sobol's complaint.

**FACTS AND PROCEDURAL HISTORY**

¶ 2 In January 2003, the Supreme Court of Arizona, by administrative order, adopted a new section to the Code of Judicial Administration, Section 7–208, and established the Legal Document Preparer Program ("the Program"). The Supreme Court Administrative Order 2003–14, filed on January 16, 2003, defines legal document preparers as non-lawyers who "prepare or provide legal documents, without the supervision of an attorney, for an entity or a member of the public who is engaging in self representation in any legal matter." Under Section 7–208(F)(1)(b), certified legal document preparers may provide general legal information but may not give legal advice. Section 7–208(D)(4) established the Board of Legal Document Preparers ("the Board"), which, in part, hears and adjudicates complaints against certified legal document preparers.

¶ 3 In July 2004, Sobol filed a complaint in the superior court against Alarcon accusing her of defamation. Sobol alleged he was a certified legal document preparer "as defined and authorized under Section 7–208" and, as such, was hired by Jerry T. to prepare documents in connection with his divorce from his wife, Miranda. Because he had been retained by Jerry, Sobol referred Miranda to Community Legal Services for help in responding to the divorce documents. Miranda contacted Alarcon, a licensed Arizona attorney employed by Community Legal Services, requesting legal assistance.

¶ 4 Subsequently, Alarcon sent a letter to the State Bar's unauthorized practice of law counsel, accusing Sobol of holding himself out as an attorney and providing "unauthorized" legal advice. Alarcon also accused Sobol of threatening Miranda and giving her wrongful and incorrect information. Alarcon's letter read, in part, as follows:

> I am writing on behalf of an applicant of Community Legal Services, Miranda [ ]. [Miranda] has had contact with Alan Sobol ... some of which I find quite troubling with respect to the unauthorized practice of law.... In the initial contacts between [Miranda] and Mr. Sobol, he held himself out to be [Jerry's] attorney, although he is not a member of the state bar.... [H]e

has wrongfully advised her that he would seek a warrant out for her arrest if she did not waive personal jurisdiction, he has threatened her by stating that he would force her to get an attorney if she responded to the petition, and he has given her incorrect information regarding joint and sole custody of children. Some of these actions may constitute unauthorized legal advice, while others are threats to [her].

¶ 5 Sobol claimed Alarcon's letter was "scurrilous" and the foregoing statements were false and made "without foundation." He requested $250,000 in damages.

¶ 6 Alarcon moved to dismiss the complaint. Noting that complaints to the State Bar concerning the conduct of attorneys are absolutely privileged, that is, immune from civil liability, Alarcon asserted there was no reason why the same absolute privilege should not be extended to complaints against certified legal document preparers. She further asserted that the absolute immunity doctrine had, in fact, been extended to such complaints pursuant to a rule adopted by the Supreme Court of Arizona that, in operation with other rules, authorized the State Bar to investigate and prosecute complaints alleging the unauthorized practice of law. *See generally* Ariz. R. Sup.Ct. 75–80. Rule 80(a)(6) specifically states, in part:

> *Immunity from Civil Suit.* Communications to the court, state bar, bar counsel, unauthorized practice of law counsel, volunteer bar counsel, or investigators relating to testimony given in the proceedings shall be absolutely privileged as provided by law, and no civil action predicated thereon may be instituted against any complainant or witness.

¶ 7 Alarcon also requested sanctions under Arizona Rule of Civil Procedure 11(a), arguing Sobol's complaint was not " 'warranted by existing law' " and had been filed for an improper purpose, specifically, to intimidate

her into withdrawing her letter. Alarcon attached to her motion a letter from Sobol offering to withdraw his complaint in return for a retraction. Sobol's letter stated Alarcon's complaint had been forwarded by the State Bar to the Board.

¶ 8 In response, Sobol argued that complaints against certified legal document preparers had to be addressed to the Board, not the State Bar. He further asserted that, under Section 7–208, "complainants" were not afforded any immunity.

¶ 9 Citing Rule 80(a)(6), the superior court held Alarcon's complaint to the State Bar was "absolutely privileged" and granted Alarcon's request for Rule 11(a) sanctions.[1] Sobol timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12–2101(B) (2003).

## DISCUSSION

### I. Absolute Immunity

■ ¶ 10 Restated for clarity, Sobol initially argues the superior court's reliance on Rule 80(a)(6) as the basis for its ruling was improper. He asserts the rule only applies to communications made in "formal proceedings instituted in superior court by [the State Bar's] unauthorized practice of law counsel." We do not need to construe the scope of a "proceeding" under this rule because there was and is another basis for immunity, grounded in the common law, as Alarcon argued below and argues on appeal.[2]

¶ 11 As a defense to a defamation action, the Supreme Court of Arizona has recognized that certain statements that normally would be actionable will not be because the speaker is acting " 'in furtherance of some interest of social importance, which is entitled to protection even at the expense of uncompensated harm to the plaintiff's reputation.' " *Green Acres Trust v. London,* 141

---

1. In a separate memorandum decision, *Sobol v. Alarcon,* 1 CA–CV 04–0720 (Ariz.App. Mar. 30, 2006) (mem.decision), we reversed the superior court's sanction award. *See* Ariz. R. Sup.Ct. 111(h).

2. In a defamation case, if the defendant-speaker raises an immunity defense, whether an immuni-

ty exists, and the scope of any immunity, present questions of law which we review de novo. *Burns v. Davis,* 196 Ariz. 155, 158–59, ¶ 4, 993 P.2d 1119, 1122–23 (App.1999); *Ashton–Blair v. Merrill,* 187 Ariz. 315, 317, 928 P.2d 1244, 1246 (App.1996).

Ariz. 609, 612, 688 P.2d 617, 620 (1984) (quoting Prosser, *Law of Torts* § 114, p. 776 (4th ed.1971)). One such protection is provided by what is known as absolute immunity or privilege.[3] Absolute immunity is grounded on the "recognition that certain persons, because of their special position or status, should be as free as possible from fear that their actions in that position might have an adverse effect upon their own personal interest." *Id.* at 612, 688 P.2d at 620.

To accomplish this, it is necessary for them to be protected not only from civil liability but also from the danger of even an unsuccessful civil action. To this end, it is necessary that the propriety of their conduct not be inquired into indirectly by either court or jury in civil proceedings brought against them for misconduct in their position. Therefore the privilege, or immunity, is absolute and the protection that it affords is complete. It is not conditioned upon the honest and reasonable belief that the defamatory matter is true or upon the absence of ill will on the part of the actor.

Restatement (Second) of Torts div. 5, ch. 25, topic 2, title B, introductory note (1977).

■ ¶ 12 Because absolute immunity immunizes absolutely, it is reserved for "those situations where the public interest is so vital and apparent that it mandates complete freedom of expression without inquiry into a defendant's motives." *Burns,* 196 Ariz. at 160, ¶ 11, 993 P.2d at 1124 (quoting *Supry v. Bolduc,* 112 N.H. 274, 293 A.2d 767, 769 (1972)).

¶ 13 This court has afforded absolute immunity to individuals who have filed complaints with the State Bar against attorneys accusing them of unethical conduct. *Drummond v. Stahl,* 127 Ariz. 122, 126, 618 P.2d 616, 620 (App.1980). We have done so to encourage the public to report alleged unethical lawyer behavior without fear of reprisal and free from the threat of civil litigation. Application of the privilege also ensures the State Bar, as the entity authorized by the Supreme Court of Arizona to regulate attorney conduct, receives the information it

needs to accomplish its disciplinary role. *See id.* As we explained in *Drummond,*

We must weigh the possible harm to attorneys in the filing of a malicious complaint against the need to encourage the reporting of unethical conduct. In weighing these conflicting interests, it is our opinion that public policy demands the free reporting of unethical conduct if we are to continue to enjoy the privilege of a self-regulating profession.

*Id.; accord Ashton–Blair,* 187 Ariz. at 317–18, 928 P.2d at 1246–47.

¶ 14 In Arizona, a legal document preparer certified in accordance with the Program may perform specified legal services without being supervised by an attorney in good standing with the State Bar. In light of the role now permissibly played by certified legal document preparers in working with the public and providing the public with certain legal services, just as with the legal profession, public policy demands that absolute immunity be extended to members of the public who report alleged unethical behavior by certified legal document preparers. We can conceive of no reason why a person who reports allegedly unethical conduct by a lawyer should be protected by absolute immunity while a person who reports allegedly unethical conduct by a certified legal document preparer should be subjected to the risk of civil liability. Given the public's need for access to legal services and the importance of regulating those who provide such services, there should be no distinction. The proper, fair and efficient administration of justice demands no less.

¶ 15 We are not alone in concluding absolute immunity should be extended to those who report alleged unethical conduct by certified legal document preparers. Another panel of this court reached the same conclusion in a case also involving Sobol. *Sobol v. Marsh,* 212 Ariz. 301, 130 P.3d 1000 (Ariz. App. 2006).

¶ 16 In summary, it is unnecessary for us decide whether the superior court correctly

---

**3.** In defamation actions, the terms "absolute privilege" and "immunity" are often used interchangeably. *Id.* at 613 n. 1, 688 P.2d at 621 n. 1.

relied on Rule 80(a)(6). Alarcon was absolutely immune from civil liability arising out of the statements contained in her letter unless, as we consider next, she forfeited her right to this immunity by initially submitting her complaint to the State Bar and not to the Board.

## II. Forfeiture of Absolute Immunity

 ¶ 17 As discussed above, Alarcon initially submitted her complaint against Sobol to the State Bar. It, in turn, forwarded her complaint to the Board. Sobol correctly points out the Board, and not the State Bar, has disciplinary authority over certified legal document preparers. Therefore, he argues, Alarcon is not entitled to any immunity. We disagree.

 ¶ 18 The power to regulate the practice of law is vested in the Supreme Court of Arizona. *Scheehle v. Justices of the Supreme Court of Ariz.*, 211 Ariz. 282, 290, ¶ 29, 120 P.3d 1092, 1100 (2005); *In re Creasy*, 198 Ariz. 539, 540–41, ¶¶ 6–7, 12 P.3d 214, 215–16 (2000). "The determination of who shall practice law in Arizona and under what condition is a function placed by the state constitution in [the Supreme Court of Arizona]." *In re Smith*, 189 Ariz. 144, 146, 939 P.2d 422, 424 (1997) (quoting *Hunt v. Maricopa County Employees Merit Sys. Comm'n*, 127 Ariz. 259, 261–62, 619 P.2d 1036, 1038–39 (1980)). Accordingly, the power to regulate the practice of law extends to non-lawyers as well as to attorneys admitted to bar membership. *Creasy*, 198 Ariz. at 541, ¶ 7, 12 P.3d at 216.

¶ 19 The supreme court has promulgated rules defining and describing both the practice of law and the unauthorized practice of law. *See generally* Ariz. R. Sup.Ct. 31. Unless exempted, individuals who practice law in Arizona must be members in good standing with the State Bar. Ariz. R. Sup.Ct. 31(b), (d). The supreme court has authorized the State Bar to investigate and prosecute unauthorized practice of law violations. *See generally* Ariz. R. Sup.Ct. 75–80.

¶ 20 A legal document preparer, who has been certified under the Program, is exempt from the supreme court's prohibitions regarding the unauthorized practice of law insofar as he or she is performing services in accordance with Section 7–208. Ariz. R. Sup. Ct. 31(d)(23). A certified legal document preparer is subject to discipline by the Board. However, with one exception not applicable here, an uncertified legal document preparer is not.[4] Instead, an uncertified legal document preparer accused of engaging in the unauthorized practice of law remains subject to State Bar disciplinary action. The power to discipline legal document preparers is, thus, shared by the State Bar and the Board and its exercise depends on the certification status of the legal document preparer. The regulatory framework established by the supreme court concerning legal document preparers envisions the State Bar and the Board will work together to ensure complaints against legal document preparers are received and ultimately resolved by the appropriate disciplinary entity.[5]

¶ 21 This case illustrates the operation of this regulatory system. After the State Bar received Alarcon's complaint, it was authorized to review the complaint to determine whether action was appropriate. *See* Ariz. R. Sup.Ct. 78. Because Sobol had been certified by the Board, the State Bar properly forwarded Alarcon's complaint to the Board. In light of the regulatory framework established by the supreme court regarding legal document preparers, Alarcon's complaint was protected by absolute immunity even though, as an initial matter, she sent it to the State Bar and not to the Board.

¶ 22 In so holding, we recognize absolute immunity in the context of a defamation action may be lost or forfeited if the speaker distributes or disseminates the defamatory statement outside of the proceeding or con-

---

4. Section 7–208(H)(1)(b) sets out the exception. It provides that the Board retains jurisdiction to adjudicate a complaint made against a legal document preparer, formerly certified, who becomes uncertified by allowing the certification to expire if the complaint "is pending prior to the expiration date."

5. We note Section 7–208(H)(3) authorizes the Board to refer a complaint outside of its jurisdiction to another state agency or entity with jurisdiction.

text which gives rise to the immunity. *See generally Green Acres,* 141 Ariz. at 614–15, 688 P.2d at 622–23 (although absolute immunity applies to defamatory statements in a judicial proceeding, it does not extend to a communication unrelated to the proceeding); *Johnson v. McDonald,* 197 Ariz. 155, 159–60, ¶ 19, 3 P.3d 1075, 1079–80 (App.1999) (communications by defendants to state legislators failed to have sufficient relationship to judicial proceeding for application of absolute immunity). Because the State Bar and the Board are empowered to discipline legal document preparers depending on their certification status and may need to exchange information to accomplish this task, Alarcon's complaint was not made outside the proceeding or context absolute immunity was designed to protect.[6]

## CONCLUSION

¶ 23 For the reasons stated above, the superior court's dismissal of Sobol's complaint is affirmed.

CONCURRING: JEFFERSON L. LANKFORD, Judge and JOHN C. GEMMILL, Judge.

---

**6.** Sobol suggests there should be no common law immunity for complaints against certified legal document preparers because no such immunity was incorporated by the supreme court in Section 7–208. Although the text of Section 7–208 does not set out any immunity for complainants, its failure to do so does not limit the application of common law immunity to such complainants.