IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| MARTIAL H. LEDVINA and PATRICIA F. LEDVINA, | ) ) ) | 2 CA-CV 2005-0035 DEPARTMENT B |
| Plaintiffs/Appellants, | ) ) | O P I N I O N |
| v. | ) ) | |
| ANTHONY L. CERASANI and MARGARET CERASANI, | ) ) ) | |
| Defendants/Appellees. | ) ) ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C-20040200

Honorable Jane L. Eikleberry, Judge

AFFIRMED

David J. Euchner                                                          Tucson
                                        Attorneys for Plaintiffs/Appellants

Bancroft Susa & Galloway
  By Douglas S. John                                                     Tucson
                                       Attorneys for Defendants/Appellees

E S P I N O S A, Judge.

¶1        In this case, we are asked to decide whether a person who reports an alleged crime to police is subject to being sued for making the report. Appellants Martial and Patricia Ledvina have appealed from the trial court's entry of summary judgment in favor of appellees Anthony and Margaret Cerasani in the Ledvinas' defamation action arising from such a report that Mr. Cerasani made to law enforcement authorities. Because we conclude the trial court correctly determined the report was absolutely privileged, we affirm.

**Facts and Procedural Background**

¶2        Although we view the evidence in the light most favorable to the non-moving party below, *Johnson v. Hispanic Broadcasters of Tucson*, 196 Ariz. 597, ¶ 2, 2 P.3d 687, 688 (App. 2000), the essential facts are straightforward and undisputed. After Anthony Cerasani reported to the Marana Police Department that his neighbor, Martial Ledvina, had slashed the tires of Cerasani's recreational vehicle, the town prosecutor in December 2003 charged Ledvina with criminal damage under A.R.S. § 13-1602. A few weeks later, the Ledvinas sued the Cerasanis for defamation, claiming Cerasani's report was made "in reckless disregard of the truth" and "uttered maliciously." In April 2004, before trial, the prosecutor moved to dismiss the criminal charges against Ledvina without prejudice, due to insufficient evidence. In the defamation action, the Cerasanis moved for summary judgment on the sole ground that Cerasani's complaint to the police was absolutely privileged, precluding any recovery as a matter of law. After a hearing, the trial court found there was no controlling Arizona precedent, ruled that Cerasani's police complaint was absolutely privileged as statements related to a judicial proceeding under sections 587 and 598 of the

2

Restatement (Second) of Torts (1977), and granted the Cerasanis' motion for summary judgment. This appeal followed.

## Standard of Review

¶3　　　　We review a trial court's grant of summary judgment *de novo* and independently determine whether a court's legal conclusions were correct. *Valder Law Ofcs. v. Keener Law Firm*, 212 Ariz. 244, ¶ 14, 129 P.3d 966, 971 (App. 2006). Summary judgment is properly granted when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(c), 16 A.R.S., Pt. 2. A defendant is entitled to summary judgment when he or she demonstrates that, with citations to relevant discovery, the plaintiff cannot establish a prima facie case. *Hydroculture, Inc. v. Coopers & Lybrand*, 174 Ariz. 277, 284, 848 P.2d 856, 863 (App. 1992). Whether and to what extent a privilege applies is a matter of law we review *de novo*. *See Green Acres Trust v. London*, 141 Ariz. 609, 613, 688 P.2d 617, 621 (1984).

## Discussion

¶4　　　　The Ledvinas contend the trial court erred in finding Cerasani's defamatory statements shielded by an absolute privilege. On appeal, as below, the Cerasanis have asserted that, even were the Ledvinas' claims true, Anthony Cerasani's complaint to law enforcement was absolutely privileged, preventing the Ledvinas from maintaining a defamation action. When statements are absolutely privileged, the speaker is immune from civil liability and courts do not inquire into the declarant's motives or whether the statements were made in good faith. *Sobol v. Alarcon*, 212 Ariz. 315, ¶ 11, 131 P.3d 487, 490 (App.

3

2006) (also noting that the terms "absolute privilege" and "immunity" are often used interchangeably in defamation actions). In contrast, when statements are subject only to a qualified privilege, the declarant may lose the privilege by making false statements maliciously or in bad faith. *S.H. Kress & Co. v. Self*, 22 Ariz. App. 230, 232, 526 P.2d 754, 756 (1974). "Because absolute immunity immunizes absolutely, it is reserved for '"those situations where the public interest is so vital and apparent that it mandates complete freedom of expression without inquiry into a defendant's motives."'" *Sobol*, 212 Ariz. 315, ¶ 12, 131 P.3d at 490, *quoting Burns v. Davis*, 196 Ariz. 155, ¶ 11, 993 P.2d 1119, 1124 (App. 1999), *quoting Supry v. Bolduc*, 293 A.2d 767, 769 (N.H. 1972).

¶5        The Ledvinas rely on *Selby v. Savard*, 134 Ariz. 222, 655 P.2d 342 (1982), in support of their argument that only a conditional privilege should apply to statements made in a complaint to police. But we agree with the Cerasanis that *Selby* does not address the issue that is presented here. In *Selby*, a disgruntled resort owner had made disparaging allegations about a liquor department official and had contacted a Department of Public Safety (DPS) officer to report "allegations of [the official's] criminal conduct of the most serious nature." *Id.* at 224, 655 P.2d at 344. On appeal from a judgment awarding damages to the official in his defamation action against the resort owner, the appellant owner asserted that his report to DPS was conditionally privileged. Our supreme court, without addressing whether an absolute privilege might apply, noted the official was a public figure subject to the "actual malice" standard of *New York Times v. Sullivan*, 376 U.S. 254, 280, 84 S. Ct. 710, 726 (1964). Because it had been shown the defendant had published the defamatory statements with actual

4

malice, the plaintiff had "overcome" the defendant's "conditional privilege." *Selby* at 225, 655 P.2d at 345. Consequently, the defendant could not avoid liability for defamation arising from his police report.

¶6　　　Somewhat more relevant is a case cited by neither party, *Kress*. There, the plaintiff had prevailed on a defamation action against an off-duty police officer working as a security guard, who had reported to law enforcement that the plaintiff had stolen items from a department store. On appeal, the defendant security guard argued his report was absolutely privileged as statements made by a public officer in the discharge of official duties. Division One of this court held that the guard's report of a crime to law enforcement "w[as] protected by a conditional privilege" because the guard had not been acting in his official capacity as a public officer when he made the complaint. *Kress*, 22 Ariz. App. at 232, 526 P.2d at 756. The court reversed the defamation judgment because the plaintiff had failed to plead and prove the guard had made "the statements during the investigation and in the police reports out of malice or in the absence of good faith." *Id.* at 233, 526 P.2d at 757. Although *Kress* bears some resemblance to the case at hand, we do not find it controlling or persuasive for several reasons.

¶7　　　First, *Kress* relied on an earlier Division One case, *Long v. Mertz*, 2 Ariz. App. 215, 407 P.2d 404 (1965), which examined the question of absolute versus qualified immunity in terms of the status and obligations of appointed public officials whose official duties require them to make reports in the public interest, a situation clearly not present here. Second, as Cerasani points out, Arizona's courts have consistently afforded absolute immunity

5

for statements made in furtherance of judicial proceedings. *See Green Acres Trust*, 141 Ariz. at 613, 688 P.2d at 621 (noting various settings in which courts have applied absolute privilege to defame in connection with judicial proceedings). Thirdly, there is substantial persuasive authority, which we examine below, for the principle that reports to police should be viewed as related to judicial proceedings. Thus, to the extent *Kress* and *Long* arguably stand for the proposition that only conditional immunity applies to citizen complaints to law enforcement authorities, we must determine whether Arizona jurisprudence as well as public policy have since evolved to a point that has vitiated that precept.

¶8 In *Drummond v. Stahl*, 127 Ariz. 122, 125, 618 P.2d 616, 619 (App. 1980), Division One of this court held that an absolute rather than qualified privilege applied to statements made in a complaint to the State Bar of Arizona alleging unethical conduct by an attorney. Although when the complaint was filed, no investigation or proceedings had been instituted, the court noted that the State Bar "is an arm of the Arizona Supreme Court" and, as such, "acts in a judicial capacity in dealing with the conduct of attorneys." *Id*. at 126. The court explained that granting immunity for State Bar complaints was necessary "because of an 'overriding public interest' that persons should speak freely and fearlessly in litigation." *Id*. at 125, 618 P.2d at 619, *quoting Stewart v. Fahey*, 14 Ariz. App. 149, 150, 481 P.2d 519, 520 (1971). Similarly, in *Ashton-Blair v. Merrill,* 187 Ariz. 315, 317-18, 928 P.2d 1244, 1246-47 (App. 1996), the court concluded that an attorney's defamatory statements made in response to a complaint to the State Bar were shielded by absolute immunity. In both cases, the court noted that sections 585 through 589 of the Restatement (Second) of Torts (1977)

provide an absolute privilege for defamatory statements made in a judicial proceeding, "so long as such statements bear some relationship to the proceedings." *Drummond*, 127 Ariz. at 126, 618 P.2d at 620.

¶9 More recently, in *Sobol*, Division One reached a similar conclusion with regard to a complainant to the Arizona Board of Legal Document Preparers, who had alleged unethical conduct by Sobol, a document preparer. The court upheld the dismissal of Sobol's defamation action against the complainant, finding that absolute immunity applied. 212 Ariz. 315, ¶ 15, 131 P.3d at 490. The court cited the Restatement (Second) of Torts for the principle that certain complainants should be protected not only from civil liability but from the danger of an unsuccessful civil action. Noting that *Drummond* and *Ashton-Blair* had afforded absolute immunity for complaints of attorney misconduct, the court reasoned:

> We can conceive of no reason why a person who reports allegedly unethical conduct by a lawyer should be protected by absolute immunity while a person who reports allegedly unethical conduct by a certified legal document preparer should be subjected to the risk of civil liability.

*Sobol*, 212 Ariz. 315, ¶ 14, 131 P.3d at 490. That reasoning would appear to apply equally here. We similarly see no reason why a person who reports a crime to police should be afforded any less protection than a person reporting ethical misconduct by an attorney or a licensed document preparer.

¶10 Both *Drummond* and *Sobol* drew support from the Restatement in arriving at their conclusions. Indeed, in the absence of clearly controlling precedent, Arizona's courts "view[] the Restatement as authority for resolving questions concerning rules in defamation

7

cases." *Burns*, 196 Ariz. 155, ¶ 19, 993 P.2d at 1126. The Restatement (Second) of Torts § 587 directly addresses the issue in this case. It states:

> A party to a private litigation or a private prosecutor . . . is absolutely privileged to publish defamatory matter concerning another in communications *preliminary to the proposed judicial proceeding, or in the institution of* or during the course and as part of, a judicial proceeding in which he participates, if the matter has some relation to the proceeding.

(Emphasis added). Section 588 provides:

> A witness is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding or as part of a judicial proceeding in which he is testifying, if it has some relation to the proceeding.

And comment (e) to § 598 states:

> Formal or informal complaints to a prosecuting attorney or other law enforcement officer concerning violations of the criminal law are absolutely privileged under the rule stated in § 587.

*See also* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 114, at 819-20 (5th ed. 1984) ("complaint to a prosecuting attorney or a magistrate is to be regarded as an initial step in a judicial proceeding").

¶11 Other jurisdictions and commentators have recognized that a complaint to police is the first step in a judicial proceeding, and courts have accordingly applied the rule of absolute immunity in addressing related defamation actions.

> [W]e adopt the rule that treats both formal and informal complaints and statements to a prosecuting authority as part of the initial steps in a judicial proceeding, and as such entitled to absolute immunity from an action for defamation. W. Prosser, Torts s 114 at 781 (4th ed. 1971). The same absolute immunity

8

> or privilege applies to statements made to the city or county attorney or those investigating a suspected crime.

*McGranahan v. Dahar*, 408 A.2d 121, 128-29 (N.H. 1979); *see also Hagberg v. Cal. Fed. Bank FSB*, 81 P.3d 244, 249 (Cal. 2004),[1] *Starnes v. Int'l Harvester Co.*, 539 N.E.2d 1372, 1374-75 (Ill. App. Ct. 1989); *cf. Hott v. Yarbrough*, 245 S.W. 676, 677 (Tex. Comm'n App. 1922) (letters to grand jury foreman and county attorney alleging criminal violation absolutely privileged); *see* Laurence H. Elldredge, *The Law of Defamation* § 73, at 356 (1978); 1 Arthur B. Hanson, *Libel and Related Torts* 87 (1969); Rodney A. Smolla, *Law of Defamation* § 8.03[3][c], at 8-12 (1991).

¶12     The Cerasanis further argue that only an absolute privilege from civil litigation can adequately promote the compelling public policy of encouraging the free and unhindered communications to law enforcement authorities necessary to facilitate the investigation and prosecution of crimes. We agree that requiring alleged crime victims to rely on the defense of qualified immunity in defamation actions would have detrimental consequences, including potentially permitting criminal defendants to harass and intimidate victims and witnesses who would testify in court. The mere possibility of retaliatory defamation claims would also tend to discourage free and unfettered reporting to law enforcement authorities to assist the

---

[1]Until recently, California courts of appeal had disagreed about the nature of the privilege applicable to a citizen's report to police. *Compare Williams v. Taylor*, 181 Cal. Rptr. 423, 427-28 (Ct. App. 1982) (absolute privilege) *with Fenelon v. Superior Court*, 273 Cal. Rptr. 367, 368-69 (Ct. App. 1990) (qualified privilege). In *Hagberg*, the California Supreme Court resolved that conflict and held that statements made to police about suspected criminal activity are absolutely privileged. Although *Hagberg* construed Cal. Civ. Code § 47 in determining an absolute privilege applied to citizen complaints, the same policies that inform that statute also inform the common law rule.

detection and prosecution of criminal activity. In *Drummond*, the court observed that applying a conditional privilege

> would allow the institution of a civil action by the mere addition of an "actual malice" allegation. This would permit a civil action against anyone who has complained to the State Bar and subject such complainant to the full, expensive scope of discovery and litigation, thus "chilling" the motivation of those who believe they have knowledge of improper legal behavior.

127 Ariz. at 126, 618 P.2d at 620. In the context of citizen reports to police, California courts have explained:

> In our view . . . , a communication concerning possible wrongdoing, made to an official governmental agency such as a local police department, and which communication is designed to prompt action by that entity, is as much a part of an "official proceeding" as a communication made after an official investigation has commenced. [*Imig v. Ferrar*, 138 Cal. Rptr. 540, 543 (Ct. App. 1977).] After all, "[t]he policy underlying the privilege is to assure utmost freedom of communication between citizens and public authorities whose responsibility it is to investigate and remedy wrongdoing." [*Id*.] In order for such investigation to be effective, "there must be an open channel of communication by which citizens can call . . . attention to suspected wrongdoing. That channel would quickly close if its use subjected the user to a risk of liability for libel. A qualified privilege is inadequate under the circumstances . . . .
>
>     . . . .
>
> The importance of providing to citizens free and open access to governmental agencies for the reporting of suspected illegal activity outweighs the occasional harm that might befall a defamed individual. Thus the absolute privilege is essential." [*King v. Borges*, 104 Cal. Rptr. 414, 418 (Ct. App. 1977).]

*Hagberg*, 81 P.3d at 251, *quoting Williams v. Taylor*, 181 Cal. Rptr. 423, 428 (Ct. App. 1982).

10

¶13 Other courts as well have followed similar reasoning in affording absolute immunity to citizens' statements to police, emphasizing the importance of open communications in crime prevention and criminal apprehension. *See, e.g., Gen. Elec. Co. v. Sargent*, 916 F.2d 1119, 1125-27 (6th Cir. 1990); *Borg v. Boas*, 231 F.2d 788, 794-95 (9th Cir. 1956); *Cutts v. Amer. United Life Ins. Co.*, 505 So.2d 1211, 1215 (Ala. 1987); *Starnes*, 539 N.E.2d at 1374-75; *Flynn v. Boglarsky*, 129 N.W. 674, 676 (Mich. 1911); *Hall v. Pizza Hut,* 396 N.W.2d 809, 813 (Mich. Ct. App. 1986); *McGranahan*, 408 A.2d at 128-29; *White v. Basnett*, 700 P.2d 666, 668 (Okla. Civ. App. 1985); *Hott*, 245 S.W. at 677. In *McGranahan*, the New Hampshire Supreme Court explained:

> The law does not, and should not, allow recovery in tort by all persons accused of crimes and not convicted. There is no guarantee in our society that only guilty persons will be accused and arrested. Except in extreme cases, for which malicious prosecution or abuse of process are adequate remedies, a person wrongfully accused of a crime must bear that risk, lest those who suspect wrongful activity be intimidated from speaking about it to the proper authorities for fear of becoming embroiled themselves in the hazards of interminable litigation.

408 A.2d at 128 (citations omitted).

¶14 Finally, Arizona's adoption of the Victim's Bill of Rights significantly aids in guiding our judgment. In amending our state constitution, the people of Arizona emphatically intended that crime victims "be free from intimidation, harassment, or abuse throughout the criminal justice process," as well as be able to "refuse an interview, deposition, or other discovery requests by the defendant" or persons acting on the defendant's behalf. Ariz. Const. art. II, § 2.1(A)(1) and (5). The collateral litigation of defamation

claims arising from crime victims' reports to police would contravene those provisions and thereby vitiate Arizona's stated public policy. Indeed, in this case, the Ledvinas instituted their defamation action against the alleged victim and main witness in the criminal case, Mr. Cerasani, while the criminal charge and trial against Martial Ledvina were still pending. Accordingly, we conclude putative crime victims in Arizona are entitled to absolute immunity when they complain to police.

¶15        We acknowledge the Ledvinas' legitimate concern that absolute immunity may on occasion work to protect those who make intentionally false and malicious defamatory statements to police. We also note the case law the Ledvinas cite from jurisdictions that have limited such protection to only qualified immunity. *See, e.g., Fridovich v. Fridovich*, 598 So. 2d 65, 69 (Fla. 1992), and *Caldor v. Bowden*, 625 A.2d 959, 969 (Md. 1993). But, as discussed above, we believe the precedent and public policy of Arizona strike a different balance that offers greater protection to victims of crimes as well as those who witness and report them.[2] Moreover, there are safeguards for the subjects of malicious accusations, and disincentives for making scurrilous allegations to police. In Arizona, it is a class one misdemeanor for any person to knowingly make a false report to a law enforcement agency or political subdivision. A.R.S. § 13-2907.01. And a witness who made false statements in court would face the risk of perjury charges. A.R.S. § 13-2702. A false reporter could also

---

[2]We recognize that this case turns, in part, on an assessment of competing public policy concerns that are best suited to the legislative and political process. But we are faced with having to make that assessment to resolve this case, and, as noted above, do so with deference to the strong indication of Arizona's public policy embodied in the Victim's Bill of Rights.

face civil liability for abuse of process and malicious prosecution. *See Sierra Madre Dev. Inc. v. Via Entrada Townhouses Ass'n,* 20 Ariz. App. 550, 554, 514 P.2d 503, 507 (1973) (absolute privilege for defamatory statements in judicial pleadings not "intended to affect the validity of any claim for relief based on malicious prosecution or abuse of process").

**Disposition**

¶16        Because we conclude the trial court correctly found Mr. Cerasani was entitled to an absolute privilege respecting his report to the police, the trial court's entry of summary judgment dismissing the Ledvinas' defamation action is affirmed.


                                        _____
                                        PHILIP G. ESPINOSA, Judge

CONCURRING:


_____
PETER J. ECKERSTROM, Presiding Judge


_____
J. WILLIAM BRAMMER, JR., Judge