IN THE COURT OF APPEALS
STATE OF ARIZONA

FILED BY CLERK

DEC –6 2006

COURT OF APPEALS
DIVISION TWO

| | | |
|---|---|---|
| JAMES K. CHILTON, JR. and | ) | |
| CHILTON RANCH AND CATTLE | ) | 2 CA-CV 2005-0115 |
| COMPANY, an Arizona partnership, | ) | DEPARTMENT B |
| | ) | |
| Plaintiffs/Appellees, | ) | O P I N I O N |
| | ) | |
| v. | ) | |
| | ) | |
| CENTER FOR BIOLOGICAL | ) | |
| DIVERSITY, INC., a New Mexico | ) | |
| corporation; MARTIN TAYLOR; | ) | |
| SHANE JIMERFIELD; and ANDREW | ) | |
| JOHN SCHNELLER, | ) | |
| | ) | |
| Defendants/Appellants. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C-20033724

Honorable Richard S. Fields, Judge

AFFIRMED

Birch, Horton, Bittner and Cherot
 By Gregory S. Fisher                                        Anchorage, Alaska

and

Jaburg & Wilk, P.C.
 By Kraig J. Marton                                                       Phoenix
                                        Attorneys for Plaintiffs/Appellees

Haralson, Miller, Pitt, Feldman & McAnally, P.L.C.
  By Stanley G. Feldman                                    Tucson

and

Davis Wright Tremaine, LLP
  By Susan E. Seager                              Los Angeles, California
  and Thomas R. Burke                            San Francisco, California
                                         Attorneys for Defendants/Appellants

Gil Venable                                                  Phoenix
                                          Attorneys for Amici Curiae
                                    Arizona Wildlife Federation, Forest
                                         Guardians, Maricopa Audubon
                                            Society and The Sierra Club

Fennemore Craig
  By Norman D. James and Janice Procter-Murphy                 Phoenix
                                           Attorneys for Amicus Curiae
                                    Arizona Cattle Growers Association

---

B R A M M E R, Judge.

¶1        Appellants Center for Biological Diversity, Inc., Martin Taylor, Shane Jimerfield, and A.J. Schneller (CBD) appeal from a jury verdict finding them liable for defaming appellees James K. Chilton, Jr., and Chilton Ranch and Cattle Company (Chilton) and interfering with Chilton's business expectations, and awarding Chilton $100,000 in compensatory damages and $500,000 in punitive damages. CBD argues that the Internet publication of material it had submitted in an appeal to the United States Forest Service (USFS) is absolutely privileged under both the federal and state constitutions and Arizona common law. CBD also contends that, even if the material is not absolutely privileged,

Chilton failed to establish it was false or issued with actual malice, and that the trial court erred by submitting misleading questions to the jury. Finally, CBD asserts that the punitive damages award should be vacated. Finding no error, we affirm.

**Factual and Procedural Background**

¶2 Chilton is a rancher who holds a permit from the USFS to graze cattle on the Montana Allotment, an approximately 21,500-acre parcel of federal land in southern Arizona. As required by the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321 to 4370F, and 40 C.F.R. § 1503, the USFS invited public comment on its decision to renew the permit in 1999. USFS renewed the permit for ten years in April 2002 after finding the renewal would have no significant impact on the environment. CBD, a non-profit group, appealed this decision within the USFS's administrative appeals process in June 2002.

¶3 In July 2002, CBD posted a "news advisory" on its website that included a link to the appeal and two appendices that contained twenty-one photographs and captions it had originally submitted to USFS. Jimerfield designed and managed the website for CBD, Taylor wrote the news advisory and some of the captions that accompanied the photographs, and Schneller took most of the photographs and wrote some of the captions. The USFS denied the appeal in August 2002.

¶4 After the news advisory had been posted for about a year, and a week after sending a letter demanding a retraction, Chilton sued CBD for defamation, false light, interference with business expectations, and intentional infliction of emotional distress.

3

Before trial, Chilton withdrew the intentional infliction of emotional distress claim. During the trial, the court granted CBD's motion for a directed verdict on the false light claim. After the jury returned its verdict for Chilton, CBD appealed.

**Privileges**

¶5        CBD contends the publication of the material it submitted to the USFS is absolutely privileged under both the federal and state constitutions and Arizona common law. Chilton responds that CBD's federal constitutional defense, based on the First Amendment's Petition Clause, has been waived and that the common law privilege is inapplicable.[1] We review de novo the question of law as to whether the publication was privileged. *Lewis v. Oliver*, 178 Ariz. 330, 333, 873 P.2d 668, 671 (App. 1993).

First Amendment Petition Privilege

¶6        The First Amendment states "Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances." U.S. Const., amend. I. Quoting *Kottle v. Northwest Kidney Centers*, 146 F.3d 1056, 1059 (9th Cir. 1998), CBD argues that

>         [t]his case is governed by the Noerr-Pennington doctrine, named

---

[1]Chilton does not address CBD's Arizona constitutional argument. As we later note in paragraph 12, however, CBD has waived this argument. Accordingly, we do not consider Chilton's failure to respond a confession of error. *See In re 1996 Nissan Sentra*, 201 Ariz. 114, ¶ 7, 32 P.3d 39, 42 (App. 2001) (failure to address argument in answering brief can be considered confession of error).

4

after two cases[2] in which the [United States] Supreme Court "recognized that for the Petition Clause to be a meaningful protection of the democratic process, citizens must be immune from some forms of liability for their efforts to persuade government officials to adopt policy or perform their functions in a certain way."

They claim that the Noerr-Pennington doctrine extends the Petition Clause's protection to indirect petitioning, such as the Internet posting here.

¶7 After the jury rendered a verdict in favor of Chilton, CBD filed a joint motion for judgment as a matter of law and/or motion for new trial, arguing the Noerr-Pennington doctrine "provides an absolute privilege" for the material published on the website. The trial court found CBD had waived this argument, stating the Noerr-Pennington doctrine had not been "raised in pretrial motions, at trial, or at the time of the request for judgment as a matter of law during trial."

¶8 CBD asserts the trial court erred in finding it had waived its Noerr-Pennington doctrine claim, arguing it had raised the issue "in its answer, joint pretrial statement, [and] proposed jury instructions" before its post-trial motion. Because "[t]he concept of waiver is based on two factors: fair notice and judicial efficiency," *Geronimo Hotel & Lodge v. Putzi*, 151 Ariz. 477, 479, 728 P.2d 1227, 1229 (1986), we find the record supports the trial court's conclusion that CBD has not preserved this argument. *See Golonka v. Gen. Motors*

---

[2]The two cases are *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S. Ct. 523 (1961) and *United Mine Workers of America v. Pennington,* 381 U.S. 657, 85 S. Ct. 1585 (1965).

5

*Corp.*, 204 Ariz. 575, ¶ 34, 65 P.3d 956, 967 (App. 2003) (reviewing a trial court's decision that a party had waived an issue for an abuse of discretion).

**¶9**         In the affirmative defenses section of its answer, CBD simply stated, "Defendants state . . . first amendment protection." In its portion of the joint pretrial statement, CBD contended "the News Advisory . . . [is] protected by the First Amendment right to free speech and to petition the federal government for a redress of grievances." CBD also proposed a jury instruction it now asserts had squarely raised the Noerr-Pennington doctrine claim. However, the instruction in no way fairly raised such a claim, and the issue it raises here was never briefed or argued to the trial court until the post-trial motion. Instead, CBD argued in its summary judgment motion that it was protected by a "legislative proceeding privilege," based on *Bailey v. Superior Court*, 130 Ariz. 366, 636 P.2d 144 (App. 1981), and Arizona common law. CBD never raised or discussed the Noerr-Pennington doctrine in its directed verdict motion, made pursuant to Rule 50, Ariz. R. Civ. P., 16 A.R.S., Pt. 1, on the next to last day of the trial. Without any briefing or substantive discussion of the issue until after the trial had been completed, the trial court did not err in determining CBD had waived the issue.

**¶10**         CBD argues for a relaxation of the waiver doctrine under the rationale of *Standard Chartered PLC v. Price Waterhouse*, 190 Ariz. 6, 945 P.2d 317 (App. 1996). In that case, Division One of this court found the failure to address an issue in a motion for directed verdict during trial did not automatically waive the issue for purposes of a motion

6

for a judgment notwithstanding the verdict if the issue in question was a "pure issue of law that would not have been susceptible to the introduction of further evidence," and if the other party "was aware before [the] motion for JNOV of [the moving party's] position." *Standard Chartered*, 190 Ariz. at 27, 945 P.2d at 338. However, we find the *Standard Chartered* rationale inapplicable here. In *Standard Chartered*, the issue was adequately raised and argued before it was abandoned in the motion for a directed verdict; it "had [been] addressed . . . in summary judgment briefing before trial." *Id.* In significant contrast, there is nothing in our record that indicates there had been any briefing or substantive discussion of the Noerr-Pennington doctrine until the post-trial motions. Additionally, had the issue been raised in any meaningful way, Chilton may well have produced additional evidence with respect to the timing of CBD's appeal of the USFS decision and whether the Petition Clause privilege was applicable under the circumstances.

¶11    Finally, citing *Dombey v. Phoenix Newspapers, Inc*., 150 Ariz. 476, 482, 724 P.2d 562, 568 (1986), CBD argues we should suspend the "procedural" rule of waiver. We decline its invitation to do so. In *Dombey*, our supreme court addressed whether the plaintiff was a public figure for defamation purposes, despite the defendant's failure to raise the issue in the court of appeals, stating it could "suspend[] [waiver] in [its] discretion." *Id*. at 482, 724 P.2d at 568. CBD admits the issue in *Dombey* "was briefed and considered by the trial court," unlike here, where the Petition Clause issue was not briefed until after the trial had concluded, and the trial court had not previously been given the opportunity to consider the

7

issue. *See also McDowell Mountain Ranch Land Coal. v. Vizcaino*, 190 Ariz. 1, 5, 945 P.2d 312, 316 (1997) (declining to hear constitutional challenges to residency requirement not raised below, although appellant urged consideration of issue under *Dombey*); *Barsema v. Susong*, 156 Ariz. 309, 311 n.1, 751 P.2d 969, 971 n.1 (1988) (appellate court's discretion to hear constitutional arguments not argued below should be "sparingly invoked").

Arizona Constitution Petition Privilege

¶12     CBD also argues that the Petition Clause of the Arizona Constitution supports its claim that the material it had published on its website is privileged.[3]  However, CBD acknowledges it only raised this argument "in its post-trial motion for judgment as a matter of law."  For the same reasons discussed in our analysis of CBD's waiver of the federal constitutional privilege, we decline to address CBD's Arizona constitutional privilege argument.

Common Law Privilege

¶13     CBD additionally contends that it is entitled to an absolute privilege under Arizona common law.  Chilton argues Arizona common law does not provide an absolute privilege,[4] and asserts that, in any event, such a privilege would be inapplicable because CBD published the material "after it had abandoned and lost its appeal."  The trial court denied

---

[3]"The right of petition . . . shall never be abridged."  Ariz. Const., art II § 5.

[4]Chilton argues there is at most a qualified privilege, which can be overcome if the statements were made with actual malice. *See Burns v. Davis*, 196 Ariz. 155, ¶ 35, 993 P.2d 1119, 1128 (App. 1999).  The jury found actual malice here.

8

CBD's motion for summary judgment on this issue, and CBD then raised it again in its post-trial motion. To support its argument, CBD relies on *Ross v. Duke*, 116 Ariz. 298, 301, 569 P.2d 240, 243 (App. 1976), where the court stated, "an absolute privilege against a defamation charge arises in the context of judicial proceedings, legislative proceedings and administrative or executive functions of the government." *See also Bailey v. Superior Court*, 130 Ariz. 366, 367-68, 636 P.2d 144, 145-46 (App. 1981) (statement made in complaint to Commission on Judicial Qualifications absolutely privileged if related to subject of inquiry). CBD further argues, "[o]ther Arizona courts have concluded that administrative proceedings must be analyzed case-by-case to determine whether an absolute privilege or qualified privilege applies," citing *Burns v. Davis*, 196 Ariz. 155, 993 P.2d 1119 (App. 1999) and *Melton v. Slonsky*, 19 Ariz. App. 65, 504 P.2d 1288 (1973). CBD contends the USFS "appeal proceeding is quasi-judicial in nature" and that its statements are a part of that process and therefore absolutely privileged under the logic of *Ross* and *Bailey*.

¶14          We need not decide whether an absolute or qualified privilege applies here. The cases upon which CBD relies do not support its contention that the subsequent republishing on its website of the material it had previously submitted to the USFS is privileged. None of the cases CBD cites involves a situation in which a privilege is asserted for an alleged defamatory statement made outside a legislative, judicial, or administrative proceeding. The statements in *Bailey* were made in a complaint to the Commission on Judicial Qualifications, "an arm of the Arizona Supreme Court." 130 Ariz. at 368, 636 P.2d

9

at 145. The statements at issue in *Burns* were made at a board of adjustment meeting, 196 Ariz. 155, ¶ 1, 993 P.2d at 1122, and those in *Melton* before the State Liquor Board. 19 Ariz. App. at 66, 504 P.2d at 1289. Similarly, in *Sobol v. Alarcon*, 212 Ariz. 315, ¶ 1, 131 P.3d 487, 488 (App. 2006), and *Sobol v. Marsh*, 212 Ariz. 301, ¶ 1, 130 P.3d 1000, 1001 (App. 2006), the assertedly defamatory statements were found, respectively, in complaints to the State Bar of Arizona and to the Board of Legal Document Preparers.[5]

¶15     Here, however, Chilton did not sue CBD for the statements it had made to the USFS during the appeal process, but for the material subsequently published on CBD's website.[6] *See Green Acres Trust v. London*, 141 Ariz. 609, 614-15, 688 P.2d 617, 622-23 (1984) (no absolute immunity for statements by lawyers to reporter outside of judicial proceeding); *Alarcon*, 212 Ariz. 315, ¶ 22, 131 P.3d at 491-92 ("[A]bsolute immunity in the context of a defamation action may be lost or forfeited if the speaker distributes or disseminates the defamatory statement outside of the proceeding or context which gives rise

---

[5]We have also recently found absolute immunity for one reporting an alleged crime to law enforcement authorities. *Ledvina v. Cerasani*, No. 2 CA-CV 2005-0035, 2006 WL 3072995 (Ariz. Ct. App. Oct. 31, 2006).

[6]With respect to the First Amendment's Petition Clause, CBD argued it had published its news advisory "to encourage fellow environmentalists to press the Forest Service into changing its decision on the permit" and this "indirect petitioning" is also privileged. CBD did not make this argument specifically in its common law petition defense, but we note it acknowledged in its USFS appeal that the final date to appeal the decision was June 17, 2002. *See* 36 C.F.R. § 215.15 (providing forty-five days for an appeal). Therefore, contrary to CBD's assertion at oral argument in this court, no one else was able to appeal or affect the decision when the news advisory was published on CBD's website in July. This further supports our conclusion that the material was not privileged under Arizona common law.

to the immunity."); *see also Long v. Ansell*, 69 F.2d 386, 389 (D.C. Cir. 1933) ("[T]he offense consists not in what was said in the Senate, but in the publication and circularizing of the libelous documents" that "were[,] in part[,] reproductions of the speech," "together with a letter calling special attention to the article."); *McGovern v. Martz*, 182 F. Supp. 343, 346-47 (D.D.C. 1960) (although absolute privilege exists for statements made in legislative proceedings, circulation of reprints of copies of Congressional Record to those outside Congress not absolutely privileged); *Barker v. Huang*, 610 A.2d 1341, 1345 (Del. 1992) (although absolute common law privilege exists for statements made in course of judicial proceedings, "statements made outside of the course of judicial proceedings, such as those made during a newspaper interview concerning judicial proceedings, are not accorded the protection of the absolute privilege"). We therefore find that the trial court did not err in determining these statements were not privileged under Arizona common law.[7]

**Falsity**

¶16        CBD next argues the trial court erred in denying its post-trial motion for new trial because Chilton did not establish the statements on CBD's website were false.[8] "We

---

[7]Because we reach this result, we need not address Chilton's argument that the material "was published on CBD's website after it had abandoned and lost its appeal." It appears CBD published the news advisory on its website on July 2, 2002, before the USFS denied its appeal on August 1. And, by merely not meeting with the "responsible official" under NEPA, CBD may not have "abandoned" its appeal. *See* 36 C.F.R. § 215.17.

[8]CBD also moved for judgment as a matter of law on the issue of falsity pursuant to Rule 50(b), Ariz. R. Civ. P., 16 A.R.S., Pt. 1, but has waived this claim on appeal by failing to argue it before the case was submitted to the jury as the rule requires.

11

review the trial judge's decision to deny post-trial motions for an abuse of discretion." *Hutcherson v. City of Phoenix*, 192 Ariz. 51, ¶ 12, 961 P.2d 449, 451 (1998). "We also review the evidence in a light most favorable to upholding the jury verdict" and will affirm the judgment "if any substantial evidence exists permitting reasonable persons to reach such a result." *Id.* ¶ 13.

¶17 "To be defamatory, a publication must be false and must bring the defamed person into disrepute, contempt, or ridicule, or must impeach plaintiff's honesty, integrity, virtue, or reputation." *Godbehere v. Phoenix Newspapers, Inc.*, 162 Ariz. 335, 341, 783 P.2d 781, 787 (1989). The trial court found that Chilton was a limited public figure for defamation purposes, and "a public-figure plaintiff must show the falsity of the statements at issue in order to prevail in a suit for defamation." *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 775, 106 S. Ct. 1558, 1563 (1986).

¶18 CBD's news advisory began with a page titled "Chiltons' Grazing Permit Challenged: Forest Service Rejects Compromise." This page was not part of the material submitted to USFS as a part of CBD's appeal. This page contained the statement, "Arizona hunting, conservation, and environmental groups" opposed the appointment of Chilton's wife to the Arizona Game and Fish Commission because these groups "claimed that [the Chiltons] tried to suppress Arizona Dept. of Game and Fish recommendations concerning the Montana allotment, and that they have an agenda hostile to wildlife and endangered species." It also quoted Taylor as saying, "much of [the land] is grazed to bare dirt, and cattle are breaking

12

into the Sonora Chub preserve." Many of the other statements on that page were critical of USFS and its grazing plan.

¶19 The news advisory also contained a link to the appeal and two appendices of photographs. The twenty-one photographs all contained captions, some simply listing where the photograph had been taken and others containing statements such as, "spring in Scribner Gulch trampled to mud," and, "dead deergrass trailing along streambed."

¶20 The jury was given special interrogatories with respect to falsity. Nine of the ten jurors found that CBD had made false statements in the news advisory. The same number found that the news advisory contained "misleading photographs." All ten found that the news advisory did not "accurately describe the condition of the Montana Allotment."

¶21 CBD admits that four of the twenty-one photographs "mistakenly depicted adjoining private lands." CBD argues, however, that "[i]t is undisputed that the unfenced boundaries of the private land and public land on the Montana Allotment are difficult to discern." Whether CBD was mistaken about the boundaries goes to malice rather than falsity and is not relevant.

¶22 CBD also contends the photographs were not false because, under NEPA, the USFS was "legally obligated to consider the impact of cattle on adjoining private land." However, the news advisory never indicated that the photographs had been taken of private land. The comments that preceded the photographs in the news advisory state that this is an "[i]nspection of [the] Montana [A]llotment."

13

**¶23** Finally, CBD argues the news advisory was substantially true. "Substantial truth is an absolute defense to a defamation action in Arizona." *Read v. Phoenix Newspapers, Inc.*, 169 Ariz. 353, 355, 819 P.2d 939, 941 (1991). In its opening brief, CBD stated, "Inevitably, what is absolute truth to an environmentalist about overgrazing on 21,500 acres of federal public land is a 'lie' to a cattle rancher." Unsurprisingly, Chilton's witnesses testified that the photographs and captions were misrepresentations of the condition of the land in the Montana Allotment. Equally unsurprising is the fact that CBD's witnesses testified that these photographs and captions were accurate depictions. The jury was instructed as to the substantial truth defense and found the news advisory was not substantially true. Because there was evidence to support this finding, we may not substitute our judgment for that of the jury. *See Hutcherson*, 192 Ariz. 51, ¶ 13, 961 P.2d at 451.

**¶24** Therefore, we find the trial court did not abuse its discretion in denying the post-trial motions on the falsity issue. *See id.* ¶ 12. Because of this conclusion, we need not address CBD's responses to Chilton's trial contentions concerning whether the photographs are "representative" of the Montana Allotment and whether "[t]he implication that the Chiltons are the '[w]orst' [p]ublic [l]and [r]anchers is [p]rotected [o]pinion."

### Malice

**¶25** Public figures "may recover damages for defamation only if they prove 'actual malice,' that is, 'knowledge that [the defamatory statement] was false or with reckless disregard of whether it was false or not.'" *Currier v. Western Newspapers, Inc.*, 175 Ariz.

14

290, 292, 855 P.2d 1351, 1353 (1993), *quoting New York Times v. Sullivan,* 376 U.S. 254, 279-80, 84 S. Ct. 710, 726 (1964) (alteration in *Currier*). Public figures must prove actual malice by clear and convincing evidence. *Id*. at 292-93, 855 P.2d at 1353-54.

¶26 CBD contends the trial court erred in denying its motion for judgment as a matter of law as well as its post-trial motions on the issue of malice. A motion for judgment as a matter of law "should be granted if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). "We review de novo a trial court's ruling on a motion for JMOL," and "[w]e view the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party." *Monaco v. HealthPartners of S. Ariz.*, 196 Ariz. 299, ¶ 6, 995 P.2d 735, 738 (App. 1999).

¶27 We conclude the jury could have found actual malice by clear and convincing evidence based solely on photograph #18. This photograph, taken of private land, depicts Ruby Pasture and the caption reads, "California Gulch completely denuded of forage and severely compacted." The photograph shows two cows lying on a dry and barren field, which, viewed in the light most favorable to Chilton's defamation claim, *see id.*, clearly suggests that Chilton's cattle solely created the damage.

¶28 Significantly, Schneller, who took the photograph, testified he had been to a May Day festival at this very location about a week and one-half to two weeks before he took

15

photograph #18. And a resident of the area testified that about five to six hundred people were at that festival, with people coming and going throughout the festival, some camping on the land, and that the festival had lasted at least three weeks. Chilton also presented evidence that several hundred cars, all-terrain vehicles, and recreational vehicles had also used this location during the festival. Because photograph #18 insinuates that Chilton's cows caused the damage, and because Schneller took photograph #18 after being present at the festival, a reasonable jury considering all the evidence could have found sufficient evidence of actual malice. The trial court therefore did not err in denying the motion for judgment as a matter of law on the issue of malice.[9]

## Jury Interrogatories

¶29     CBD contends the trial court "erroneously submitted three written questions to jurors . . . about only one element of defamation—falsity." The three questions were: 1) "Did the Defendants make any false statements in their News Advisory?" 2) "Did the Defendants' News Advisory accurately describe the condition of the Montana Allotment?"

---

[9]Because of this result, we need not address CBD's motion for a new trial on the issue of actual malice as a trial court's ruling on a new trial motion is reviewed more deferentially. *Compare Monaco v. HealthPartners of S. Ariz.*, 196 Ariz. 299, ¶ 6, 995 P.2d 735, 738 (App. 1999) (reviewing de novo denial of motion for judgment as a matter of law) and *Hutcherson v. City of Phoenix*, 192 Ariz. 51, ¶ 12, 961 P.2d 449, 451 (1998) (reviewing for an abuse of discretion a denial of motion for new trial).

Further, we do not address CBD's argument, made for the first time in its reply brief, that the defamatory materials are not "of and concerning" Chilton. *See United Bank v. Mesa N. O. Nelson Co.*, 121 Ariz. 438, 443, 590 P.2d 1384, 1389 (1979) (appellate court does not consider issues raised for first time in reply brief).

and 3) "Did the Defendants' News Advisory contain any misleading photographs?" CBD states that "[t]hese written questions . . . invited jurors to ignore the actual malice and substantial truth defenses because those elements did not require a written response." We review the trial court's decision to submit written interrogatories to the jury for an abuse of discretion. *See Patania v. Silverstone*, 3 Ariz. App. 424, 428, 415 P.2d 139, 143 (1966); *cf. Gemstar Ltd. v. Ernst & Young*, 185 Ariz. 493, 504, 917 P.2d 222, 233 (1996) ("[W]hen a party challenges a trial court's jury instruction, reversal is justified only if the instruction was both erroneous and 'prejudicial to the substantial rights of the appealing party.'"), *quoting Walters v. First Fed. Sav. & Loan Ass'n*, 131 Ariz. 321, 326, 641 P.2d 235, 240 (1982).

¶30 CBD has failed to show that the interrogatories were erroneous. The jury was properly instructed on all of the elements of defamation. The court specifically instructed the jury that it must find actual malice before it could find Chilton had been defamed, and that substantial truth is a defense to a defamation claim. "We must assume on review that the jury followed the instructions of the trial court." *Hyatt Regency Phoenix Hotel Co. v. Winston & Strawn*, 184 Ariz. 120, 140, 907 P.2d 506, 526 (App. 1995).

¶31 The cases cited by CBD in which general verdicts were vacated by the United States Supreme Court in defamation cases are inapposite. In *New York Times Co. v. Sullivan*, 376 U.S. 254, 283, 84 S. Ct. 710, 727 (1964), the Court mandated an actual malice standard for libel actions brought by public officials. Alabama law required a showing of actual malice for punitive damages but not general damages. *Id*. at 283, 84 S. Ct. at 728. As the

17

general verdict did not specify whether the damages awarded were punitive or general., the Supreme Court vacated the judgment. *Id.* at 284, 84 S. Ct. at 728. A general verdict in *Greenbelt Cooperative Publishing Ass'n v. Bresler*, 398 U.S. 6, 10-11, 90 S. Ct. 1537, 1540 (1970), was also vacated because the trial court incorrectly instructed the jury and, in light of the general verdict, it was impossible to know whether the jury had "imposed liability on a permissible or an impermissible ground." Neither of these cases involve a situation, as here, where the jury was correctly instructed. Because the jury is presumed to have followed the instructions it received, *Hyatt Regency*, 184 Ariz. at 140, 907 P.2d at 526, we cannot say the trial court abused its discretion in submitting the interrogatories to the jury. *See Patania*, 3 Ariz. App. at 428, 415 P.2d at 143.

**Punitive Damages**

¶32        CBD next challenges the trial court's denial of its motion for judgment as a matter of law as well as its post-trial motions on the issue of punitive damages. We review the denial of a motion for judgment as a matter of law de novo, viewing the evidence in the light most favorable to the nonmoving party. *Monaco v. HealthPartners of S. Ariz.*, 196 Ariz. 299, ¶ 6, 995 P.2d 735, 738 (App. 1999).

¶33        CBD first argues that punitive damages are inappropriate in this case because of the novel legal issues the case presented. It relies on two Ninth Circuit cases, *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1104 (9th Cir. 1992), and *Morgan Guaranty Trust Co. v. American Savings & Loan Ass'n*, 804 F.2d 1487, 1500 (9th Cir. 1986), to argue that "cases

involving novel legal issues generally are not appropriate for punishment." However, we disagree with CBD's contention that these issues are novel in Arizona. Defamation is a long-standing tort, and the common law privilege defense CBD raised in the trial court is also not novel, as evidenced by the cases upon which it relied to support its claim that its news advisory was privileged.

¶34 CBD further contends the mental state required for punitive damages was not established. In *Linthicum v. Nationwide Life Insurance Co.*, 150 Ariz. 326, 331, 723 P.2d 675, 680 (1986), our supreme court stated a court must find an "evil mind" to support the imposition of punitive damages, and "[t]he key is the wrongdoer's intent to injure the plaintiff or his deliberate interference with the rights of others, consciously disregarding the unjustifiably substantial risk of significant harm." The trial court stated that its "previous decision in finding that there's enough to go to the jury on actual malice is almost 90 percent of what I need to decide that punitive damages also go to the jury," and gave a proper instruction to the jury on punitive damages. The circumstances we have already addressed regarding photograph #18 could lead a reasonable jury to infer a "conscious[] disregard . . . [for the] risk of significant harm." *Id*. The record supports the trial court submitting the punitive damages issue to the jury.

¶35 CBD also asserts that the punitive damage award was "excessive, manifestly unfair, and unreasonable." It relies on *Acheson v. Shafter*, 107 Ariz. 576, 579, 490 P.2d 832, 835 (1971), for the proposition that we should vacate a punitive damage award if the verdict

19

is "so exorbitant as to indicate passion, prejudice, [or] mistake." In denying CBD's post-trial motions, the trial court stated it was

> forced to conclude that its preference for a lower ratio of punitive damages to compensatory damages is insufficient to set aside the determination of the jury that $500,000 in punitive damages was the appropriate decision. This Court cannot find that the jury's decision was based upon passion or prejudice. The jury was provided with a good deal of information about defendant [CBD's] objectives and funding sources as well as its non-profit status. From the Court's [perspective], the jury in the instant case was intelligent, attentive to detail, and outwardly thoughtful. Under the circumstances, this Court will not substitute its judgment for that of the jury.

¶36        Similarly, we cannot conclude the jury's verdict was a result of passion or prejudice. CBD argues "twenty-six members of the voir dire panel were excused by the court for cause, including many who openly expressed anti-environmentalist[] . . . or pro-ranching views." This argument is unavailing, however, because those excused did not serve on the jury, and CBD does not argue that their comments during voir dire influenced the panel in any way.

¶37        CBD's contention that the damages were excessive or unreasonable because it is a non-profit organization is also unconvincing. CBD fails to cite any cases holding that non-profit organizations should be subject to lower punitive damage awards. We are aware "that the [punitive damage] award must not financially kill the defendant." *Hawkins v Allstate Ins. Co.*, 152 Ariz. 490, 501, 733 P.2d 1073, 1084 (1987). But CBD does not argue, nor does the record support, that its non-profit status would make it unable to pay the

20

punitive damages award and still survive financially.

¶38     Finally, we reject CBD's contention that the award is excessive in comparison with other Arizona defamation awards. "Whether punitive damages are excessive is based solely on the circumstances of each case." *Nienstedt v. Wetzel*, 133 Ariz. 348, 357, 651 P.2d 876, 885 (App. 1982). We therefore conclude that the trial court did not err in denying the motion for judgment as a matter of law on the issue of punitive damages.

¶39     Affirmed.

_____
J. WILLIAM BRAMMER, JR., Judge

CONCURRING:

_____
PHILIP G. ESPINOSA, Judge

_____
JOSEPH W. HOWARD, Judge

21